UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| a21, INC., [1] | : | Case No. 03:08-bk-07610-PMG |
| | : | |
| ARTSELECT, INC., | : | Case No. 03:08-bk-07611-PMG |
| | : | |
| SUPERSTOCK, INC., | : | Case No. 03:08-bk-07612-PMG |
| | : | |
| Debtors. | : | (Joint Administration Requested) |
| | : | |

**DEBTORS' AMENDED MOTION FOR ORDER (A) APPROVING BID PROCEDURES FOR SALE OF SUPERSTOCK'S ASSETS; (B) SCHEDULING A HEARING TO CONSIDER THE SALE AND APPROVING THE FORM AND MANNER OF NOTICES; (C) ESTABLISHING PROCEDURES FOR ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS, INCLUDING NOTICE OF PROPOSED CURE AMOUNTS; (D) AUTHORIZING PAYMENT OF A BREAK-UP FEE AND EXPENSE REIMBURSEMENT; AND (E) GRANTING RELATED RELIEF**

Debtors a21, Inc. ("a21"), ArtSelect, Inc. ("ArtSelect") and SuperStock, Inc.

("SuperStock" and with a21 and ArtSelect, the "Debtors") move this Court (the amended "Bid

Procedures Motion"), pursuant to §§ 105(a), 363, 365, 503 and 507 of title 11 of the United

States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), and Rules 2002, 6004, 6006 and

9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an

order (the "Bid Procedures Order") (A) approving certain bid procedures, which are attached

hereto as Exhibit A (the "Bid Procedures"), for the proposed sale of substantially all of

---

[1] The Debtors have established an Internet website, http://www.a21group.com/bank.html to provide information regarding the bankruptcy case, including copies of Debtors' major pleadings and information for potential purchasers regarding the ArtSelect Assets and SuperStock Assets, the Bid Procedures and the Auction process. The tax identification numbers of the Debtors are as follows: a21, Inc. 74-2896910, ArtSelect, Inc. 42-1503076 and SuperStock, Inc. 13-2750088. The address of the principal offices of Debtors is: 7660 Centurion Parkway, Jacksonville, FL 32256.

SuperStock's assets (the "SuperStock Assets") as set forth in that certain asset purchase agreement (the "Purchase Agreement") by and between SuperStock and Masterfile Corporation, a Canadian corporation ("Stalking Horse Bidder" or "Buyer"); (B) scheduling a hearing for the sale of the SuperStock Assets (the "Sale Hearing") and approving the form and manner of notice of the Court-supervised auction (the "Auction") and the Bid Procedures; (C) establishing procedures for the potential assumption and assignment of certain executory contracts (the "Executory Contracts" or the "Assumed Contracts"), including notice of proposed cure amounts; (D) authorizing Debtors to pay to the Buyer an Expense Reimbursement (defined below) and Break-Up Fee (defined below) under certain terms and conditions set forth more particularly below; and (E) granting related relief.  In support of this Bid Procedures Motion, the Debtors respectfully state as follows:

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are §§ 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004.

## GENERAL BACKGROUND

2. a21 acts as a holding company.  a21 does not conduct any business operations at the a21 level.  a21, acting through two operating subsidiaries, SuperStock and ArtSelect, engages in two separate businesses.  SuperStock aggregates visual content from photographers, photography agencies, archives, libraries and private collections and license the visual content to its customer base consisting of four major groups: creative (advertising and design agencies), editorial (publishing and media entities), corporate (in-house communications departments and

outside corporate communications firms) and consumers (the general public). SuperStock products are sold directly and through a global network of distributors. ArtSelect supplies home and office framed and unframed wall decor to retailers, catalogers, membership organizations and consumers through both online and traditional resale and wholesale distribution channels.

**RELIEF REQUESTED**

3. By this Bid Procedures Motion, the Debtors respectfully request entry of the Bid Procedures Order (a) approving the Bid Procedures; (b) scheduling the Sale Hearing and approving the form and manner of notice of the Auction and the Bid Procedures; (c) establishing procedures for the potential assumption and assignment of the Assumed Contracts, including notice of proposed cure amounts; (d) authorizing Debtors to pay to the Buyer a Break-Up Fee and Expense Reimbursement under certain terms and conditions set forth more particularly below; and (e) granting related relief.

**The Proposed Sale**

4. The Debtors have tried unsuccessfully to sell ArtSelect and SuperStock, either separately or as a single entity for over a year. The Debtors no longer have the working capital to continue business operations as a going concern. The Debtors believe that selling the business units as operating businesses maximize their value and provide the greatest opportunity for future benefit to the creditors, customers, employees and other stakeholders.

5. After considering their options, the Debtors determined that the floor established by a purchase of the SuperStock Assets, subject to higher and better bids pursuant to a Bankruptcy Court-approved, open Auction pursuant to section 363 of the Bankruptcy Code (the "Proposed Sale"), afforded them the best opportunity to maximize value for their creditors.

6.　　The Debtors propose to sell, assign and transfer title to the SuperStock Assets free and clear of all liens, claims, encumbrances and interests (collectively, the "Encumbrances") with such Encumbrances to attach to the net proceeds of the sale.

**The Purchase Agreement**

7.　　On or about December 3, 2008, SuperStock entered into the Purchase Agreement with the Buyer under which the Buyer would acquire substantially all of the SuperStock Assets, provided that SuperStock shall not sell its accounts receivable, cash, claims and causes of action and certain other excluded assets (collectively, the "Excluded Assets") and shall retain the Excluded Assets.　A true and correct copy of the Purchase Agreement is attached to the Sale Motion[2] filed concurrently herewith.　The Purchase Agreement permits the Buyer to designate which executory contracts the Buyer will assume with the Debtors paying up to $500,000 of "cure" costs with respect to the assigned contracts.　The cure payments will reduce the net proceeds from the sale.

8.　　Pursuant to the Purchase Agreement, the Buyer has agreed to pay $1,500,000 for the SuperStock Assets.

**Proposed Bid Procedures**

9.　　The Bid Procedures were developed consistent with the Debtors' need to expedite the sale process, but with the objective of promoting active bidding that will result in the highest and best offer the marketplace can sustain for the SuperStock Assets.　Moreover, the Bid Procedures reflect the Debtors' objective of conducting the Auction in a controlled, but fair and

---

[2] The Sale Motion and Purchase Agreement are available on the Debtors' Internet website, http://www.a21group.om/bank.html.

open, fashion that promotes interest in the SuperStock Assets by financially able, motivated bidders who are likely to close a transaction.

10. The Debtors submit that implementation of the Bid Procedures will facilitate the bidding for the SuperStock Assets. The Debtors do not believe that at this juncture, given their available liquidity and the need to sell the SuperStock Assets on an expedited basis, that approval of the Bid Procedures will chill any bidding. Quite to the contrary, approval of the Bid Procedures is in the best interests of the Debtors, their estates and their creditors in that it provides a structure and format for all potentially interested parties to equally formulate a bid for the SuperStock Assets and participate in the Proposed Sale. Failure to approve the Bid Procedures may jeopardize a sale to the detriment of the Debtors' estates and creditors.

**Break-Up Fee and Expense Reimbursement**

11. As stated above, the Debtors seek this Court's approval of the $150,000 expense reimbursement (the "Expense Reimbursement"), which is a lump sum payment without the need for the Buyer to demonstrate the expense and separate $100,000 break-up fee (the "Break-Up Fee") to the Buyer as set forth in the Purchase Agreement.

12. The Break-Up Fee and Expense Reimbursement are a condition to the Buyer's entry into the Purchase Agreement.

13. The Break-Up Fee and Expense Reimbursement shall be paid to Buyer (i) upon the closing of the Proposed Sale with another bidder other than the Buyer or (ii) if there is no closing of the Proposed Sale without fault of the Buyer and, in either case, within sixty (60) days of the petition date.

JACK_1436850.2

14.     The Break-Up Fee and Expense Reimbursement, until paid, will constitute a superpriority administrative claim having priority over any and all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code.

15.     In the event of an auction, the Buyer shall be entitled to match any competing bid net of the Break-Up Fee and Expense Reimbursement Fee.  If Buyer submits a matching bid, Buyer shall be deemed the highest and best offer.

**Notice of Sale Hearing, Auction, Bidding Procedures, and Objection Dates**

16.     Any bidder who wants to make a bid for the SuperStock Assets and participate in the Auction must submit an initial bid in conformity with the Bid Procedures to the representative of the Debtors and Foley & Lardner LLP before 4:00 p.m., Jacksonville time, on the date which is four days before the Sale Hearing (the "Bid Deadline").

17.     Not later than five (5) days after entry of this Court's Bid Procedures Order, the Debtors will serve the *Notice of Auction and Sale*, substantially in the form attached as Exhibit B, to be sent by first-class mail postage prepaid to (i) all entities that claim any interest in or lien on the SuperStock Assets; (ii) all parties that filed requests for notices under Bankruptcy Rule 9010(b); (iii) the Securities and Exchange Commission; and (iv) the Office of the United States Trustee for the Middle District of Florida.

18.     Further, to facilitate the sale, assumption, and assignment of the Assumed Contracts, the Debtors will serve, via first class mail, a notice of assignment (the "Assignment Notice"), similar to the form attached as Exhibit C, not later than five (5) days after the later of (x) Buyer designates it will assume the executory contract or (y) the entry of this Court's Bid Procedures Order on each counterparty to the Assumed Contracts.  The Assignment Notice and

accompanying documentation shall reflect which Assumed Contracts the Debtors intend to assume and assign to the Buyer in accordance with the Purchase Agreement.

19.     The Debtors will attach to the Assignment Notice their calculation of the undisputed cure amounts that the Debtors believe must be paid to cure all prepetition defaults under the Assumed Contracts.  If no amount is listed on the Assignment Notice, the Debtors contend that there is no cure amount.  Cure amounts will be paid by the Debtors.

20.     Unless a party files and serves an objection to the (i) Proposed Sale; (ii) assumption and assignment of an Assumed Contract; or (iii) proposed amount to be paid as "cure" by 4:00 p.m., EST on the date that is two days prior to the Sale Hearing (the "Objection Deadline"), then the Debtors may, if the Proposed Sale is approved, assume and assign the Assumed Contracts to the Buyer or another bidder, and such party shall (i) be forever barred from objecting to the Proposed Sale; (ii) be forever barred from objecting to the assumption and assignment of Assumed Contracts to the Buyer or another bidder; (iii) be forever barred from objecting to the cure amount and from asserting any additional cure or other amounts owing with respect to such Assumed Contract, including, but not limited to, any defaults existing under such Assumed Contract and the Debtors shall be entitled to rely solely upon the cure amount; and (iv) be forever barred and estopped from asserting or making any claim against the Debtors, the Buyer, or such another bidder or any other assignee of the Assumed Contract.

21.     Objections to the Proposed Sale, the assumption and assignment of Assumed Contracts to the Buyer or another bidder, or the amount to be paid as "cure" will be heard at the Sale Hearing.

22.     In the event that an objection to the Proposed Sale is directed solely to the cure amount for assumption and assignment of an Assumed Contract (the "Cure Amount Objection"),

a separate hearing will be held on such other date as the Debtors may designate, with notice to the non-Debtor party. An Objection (i) must set forth the basis for the objection, (ii) must set forth, with specificity, the amount the party asserts should be paid as cure if warranted, and (iii) have attached to it appropriate documentation in support of the cure amount.

23. The Debtors' decision to assume and assign an Assumed Contract is subject to Court approval and consummation of the Proposed Sale of the SuperStock Assets. Absent consummation of the Proposed Sale of the SuperStock Assets, each of the Assumed Contracts shall neither be deemed assumed nor assigned and shall in all respects be subject to further administration under the Bankruptcy Code.

24. Except to the extent otherwise provided in the Purchase Agreement or the agreement with another bidder, subject to payment of the cure amount determined by the Court (the "Cure Payment"), the Buyer or any other assignee of any Assumed Contract will not be subject to any liability to the Assumed Contract counterparty for claims that accrued or first arose before the closing date of the Proposed Sale of the SuperStock Assets, and the Debtors shall be relieved of all liability accruing or arising thereafter pursuant to Bankruptcy Code § 365(k). Debtors shall continue to be responsible for, and shall pay, all obligations, including all cure amounts due and owing, with respect to the Assumed Contracts during the Chapter 11 period until the Closing date.

25. Objections, if any, to the relief requested in the Sale Motion, including any objections under Section 365(b)(1)(c) of the Bankruptcy Code, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; (c) be filed with the Clerk of the Bankruptcy Court for the Middle District of Florida, Jacksonville Division, on or before the Objection Deadline; and (d) be served so as to be received no later than the Objection

Deadline, as applicable, by Debtors' counsel and counsel to the Buyer. The failure of any person to timely file its objection shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Sale Motion or the Debtors' assumption and assignment of any Assumed Contract or the consummation of the Proposed Sale of the SuperStock Assets and performance under the Purchase Agreement (or any alternative agreement entered into with another bidder), including the transfer of the SuperStock Assets free and clear of all Encumbrances (other than permitted encumbrances provided for expressly in the Purchase Agreement or alternative purchase agreement entered into with another bidder).

26.     The Debtors request that the Court approve the notices to be issued in connection with the Proposed Sale of the SuperStock Assets substantially in the form of the notices attached hereto as Exhibits B and C.

## BASIS FOR RELIEF

27.     Section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). As described above, approval of the Bid Procedures will greatly assist the Debtors in maximizing the value that they may obtain for the SuperStock Assets. Consequently, the Debtors respectfully submit that granting the requested relief is "appropriate" under the circumstances.

28.     Once the Debtors articulate a valid business justification, "[t]he business judgment rule is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *In re S.N.A. Nut Company*, 186 B.R. 98 (Bankr. N.D. Ill. 1995) (internal quotation, citation omitted); *In re Integrated Resources, Inc.*, 147 B.R. 650, 656

JACK_1436850.2

(S.D.N.Y. 1992); *In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a Debtor's management decisions.").

29.     Indeed, when applying the "business judgment" rule, courts show great deference to the debtor's decision-making.  *See Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981).  Thus, this Court should grant the relief requested in this Bid Procedures Motion if the Debtors demonstrate a sound business justification therefor.  *See Schipper*, 933 F.2d at 515; *In re Lionel Com.*, 722 F.2d at 1071; *In re Delaware Hudson Ry. Co.*, 124 B.R. 169 at 179.

30.     The Bid Procedures are designed to encourage competitive bidding in an orderly manner to maximize value for the Debtors' estates for their creditors, customers and employees. The proposed Bid Procedures contain terms typical for a process through which a sale of this nature is consummated, and the adoption of the Bid Procedures represents a sound exercise of the Debtors' business judgment.

31.     The Debtors have sound business justifications for seeking approval of the Bid Procedures at this juncture.  The Debtors believe it is in the best interests of their estates, creditors, customers and employees to commence an auction process immediately, as the Debtors have limited funding and resources, to try to maximize the value of their assets and maintain a core workforce.  While the Debtors have undertaken certain efforts to reduce expenses and are in the process of stabilizing their business, it is doubtful that they will be able to continue operating beyond the brief period of this proposed bidding process without additional funding, which does not appear to be forthcoming in this very difficult economic environment.  For these reasons, the Debtors have determined, based upon their business judgment, that the best option for maximizing the value of their estates for the benefit of their creditors, customers, employees and

other parties in interest is through a sale of the SuperStock Assets pursuant to the Bid Procedures.

32.     In addition, the Debtors' request for approval of the Break-Up Fee and separate Expense Reimbursement to the Buyer should be approved as an appropriate exercise of the Debtors' business judgment, and because they provide a benefit to the bankruptcy estates by encouraging competitive bidding and incentivizing the Buyer to serve as a "stalking horse" buyer for the assets. *For example*, in *Calpine Corp. v. O'Brien Environmental Energy, Inc. (In re O'Brien Environmental Energy, Inc.*), 181 F. 3d 527 (3d Cir. 1999), the Court held that even though bidding incentives are measured against a business judgment standard in non-bankruptcy transactions, the administrative expense provisions of section 503(b) of the Bankruptcy Code govern in the bankruptcy context. Accordingly, to be approved, bidding incentives must provide some benefit to the debtor's estate. *Id*. at 533.

33.     The *O'Brien* court identified at least two instances in which bidding incentives may benefit the estate. First, benefit may be found if the bidding procedures and protections "promote[] more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited." *Id*. at 537. Second, where the availability of bidding incentives induce a bidder to research the value of the debtor and submit a bid that serves as a minimum or floor bid on which other bidders can rely, "the bidder may have provided a benefit to the estate by increasing the likelihood that the price at which the debtor is sold will reflect its true worth." *Id*.

34.     Whether evaluated under section 105(a) of the Bankruptcy Code, the business judgment rule, or the "administrative expense" standard, approval of the Bid Procedures, including the Expense Reimbursement. Break-Up Fee and other bidding protections, described

above are appropriate and necessary to maximizing the value Debtors may obtain for the SuperStock Assets.

35.     The Bid Procedures are designed to encourage competitive bidding.  The Break-Up Fee and Expense Reimbursement are material inducements for, and conditions of, the Buyer's entry into the Purchase Agreement.  The Debtors believe they are fair and reasonable in view of the analysis, due diligence investigation, and negotiation undertaken by the Buyer in connection with the Proposed Sale.  Moreover, the Buyer is unwilling to hold open its offer to purchase the SuperStock Assets under the terms of the Purchase Agreement unless it is assured payment of the Break-Up Fee and Expense Reimbursement as provided above.  The Buyer's bid will serve as a floor for other bids and will induce other bids that otherwise would not have been made or otherwise would have been limited.  Thus, the Break-Up Fee and Expense Reimbursement will be covered by the proceeds that will be realized from the alternative transaction with the higher and better bidder.  This is obviously a benefit to the Debtors' estates.

36.     The Break-Up Fee and Expense Reimbursement are the products of good faith, arm's-length negotiations between the Debtors and the Buyer.  They are fair and reasonable in amount, particularly in view of the Buyer's efforts to date, the risk to the Buyer of being used as a "stalking horse," and the stabilizing effect that the execution of the Purchase Agreement is expected to have on the Debtors' business (thereby preserving value for creditors and increasing the likelihood of additional bidding).

37.     Accordingly, the Debtors request that the Court authorize the Bid Procedures, as well as payment of the Break-Up Fee and Expense Reimbursement.

## NOTICE

38.     No trustee, examiner, or statutory committee has been appointed in these chapter 11 cases.  Notice of the Bid Procedures Motion will be served on:  (a) the Office of the United

States Trustee for the Middle District of Florida; (b) creditors holding the twenty (20) largest unsecured claims against the Debtors' estates; (c) the Internal Revenue Service; (d) the Securities and Exchange Commission; (e) counsel to the Buyer; and (f) other parties pursuant to Local Bankruptcy Rules. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form annexed as Exhibit D hereto, granting this Bid Procedures Motion and such other and further relief as the Court deems just and proper.

(Signature page follows)

Date:  December 4, 2008

Respectfully submitted,

A21, INC.

By /s/ John Z. Ferguson
    John Z. Ferguson
    Its Chief Executive Officer

SUPERSTOCK, INC.

By /s/ John Z. Ferguson
    John Z. Ferguson
    Its Chief Executive Officer

ARTSELECT, INC.

By /s/ John Z. Ferguson
    John Z. Ferguson
    Its Chief Executive Officer

FOLEY & LARDNER LLP

/s/ Gardner F. Davis
Gardner F. Davis
    Florida Bar No. 0471712
    gdavis@foley.com
Michael B. Kirwan
    Florida Bar No. 0765244
    mkirwan@foley.com
John J. Wolfel, Jr.
    Florida Bar No. 030664
    jwolfel@foley.com
One Independent Drive, Suite 1300
Jacksonville, FL 32202-5017
P. O. Box 240
Jacksonville, FL 32201-0240
904.359.2000

and

Jennifer Hayes
Foley & Lardner LLP
Florida Bar No. 017325
jhayes@foley.com
100 North Tampa Street, Suite 2700
Tampa, FL 33602-5810
Phone: 813.229.2300

Counsel for Debtors (Application pending)

**EXHIBITS**

A   -      Bid Procedures
B   -      Notice of Auction and Sale
C   -      Assignment Notice
D   -      Order Approving Bid Procedures

JACK_1436850.2

# EXHIBIT A

# BID PROCEDURES FOR SUPERSTOCK ASSETS

A21, INC. ("a21"), ARTSELECT, INC. ("ArtSelect") and SUPERSTOCK, INC. ("SuperStock" and with a21 and ArtSelect, the "Debtors") have filed Chapter 11 Cases pending in the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division which are jointly administered under Case No. 08-_____ (_____). By a Motion dated December __, 2008 (the "Bid Procedures Motion"), the Debtors sought approval of the process and procedure set forth below ("Bid Procedures") through which they will determine the highest, best and otherwise financially superior offer for substantially all of the operating assets of SuperStock (the "SuperStock Assets"). On _____, 2008, the Bankruptcy Court entered its order (the "Bid Procedures Order") which, among other things, approved the Bid Procedures.

On _____, 2008, as further described below, in the Bid Procedures Motion and in the Bid Procedures Order, the Bankruptcy Court shall conduct a hearing (the "Sale Hearing") at which Debtors shall seek entry of an Order authorizing and approving the sale of the SuperStock Assets (the "Sale Order") to the Buyer (defined below) or to a Qualified Bidder (defined below) that the Debtors, in their reasonable discretion, determine to have made the highest, best and financially superior offer.

## PURCHASE AGREEMENT

On December 3, 2008, SuperStock entered into an Asset Purchase Agreement (the "Purchase Agreement") with Masterfile Corporation, a Canadian corporation (the "Buyer"), pursuant to which Buyer proposes to acquire the SuperStock Assets. Pursuant to the Purchase Agreement, the Buyer will pay SuperStock the sum of $1,500,000 and assume various executory contracts, as identified by Buyer. The transaction contemplated by the Purchase Agreement is

subject to competitive bidding as set forth herein, and approval by the Bankruptcy Court pursuant to Bankruptcy Code Sections 363 and 365.

## ASSETS FOR SALE

SuperStock is offering for sale substantially all of the operating business assets of SuperStock, including the following;

     (i)        Owned photography library;

     (ii)       Trade name "SuperStock";

     (iii)     Website addresses SuperStock.com, purestockx.com and mediamagnet.com; and

     (iv)     Various executory contracts as designated by Buyer.

The Debtors are not selling, and shall retain, all accounts receivable, whether or not billed, cash, claims for tax refunds, corporate and tax books and records, tort actions, claims against affiliates and including all claims under Chapter 5 of the Bankruptcy Code. The Debtors are not selling the stock of SuperStock Ltd., the UK Subsidiary, pursuant to this sale. (The Debtors desire to sell the stock of the UK Subsidiary separately.)

## DUE DILIGENCE

Debtors will provide potential interested bidders with information on the assets to be sold. Potential bidders should contact John Ferguson, CEO of the Debtors at 904.565.0066 (email: jferguson@superstock.com) or LaDuane Clifton, CFO of the Debtors at 904.680.2774 (email: rlclifton@superstock.com).

## MINIMUM BID – MINIMUM OVERBIDS

The minimum bid initially accepted by Debtors shall be $1,750,000. (This minimum bid recognizes that the Purchase Agreement with Buyer provides for payment to Buyer of a $100,000 break-up fee and $150,000 expense reimbursement if the SuperStock Assets are sold to

2

a third party as a result of a competing bid.)  All subsequent bids shall be in not less than $50,000 increments.  Buyer shall have the right to match any competing bid in the Auction net of the Break-Up Fee and Expense Reimbursement Fee and if Masterfile submits a Matching Bid, such bid shall be deemed the highest and best offer.

## DEADLINE FOR INITIAL BIDS

Any bidder who wants to make a bid for the SuperStock Assets and participate in the sale process must submit an initial bid to the representative of the Debtors and Foley & Lardner LLP before 4:00 p.m., Jacksonville time, on [the date that is 5 days prior to the Sale Hearing]  ("Bid Deadline").  Each initial bid must be received by the Bid Deadline (unless the Debtors, in their absolute discretion, agree to an extension), and, include: (i) a signed purchase agreement which is accompanied by a "redline" which is marked to show any changes from the Purchase Agreement with Buyer; (ii) a $50,000 deposit by cashier's check payable to Debtor SuperStock; (iii) a form of financial declaration evidencing the bidder's financial wherewithal to consummate the transaction and satisfy all the obligations acquired by the applicable purchase agreement, and, if the bidder seeks to assume any unexpired lease or any executory contract in connection with the sale, the bidder's ability to provide adequate assurance to future performance under Section 365(b)(3) if applicable, and Section 365(f)(2) of the Bankruptcy Code; and (iv) such other information as the Debtors may have reasonably requested.

No bid will be contingent upon any due diligence investigation, receipt of financing, or any board of directors, shareholders or other entity approval.

Each bid must disclose the identity of the bidder's organization, including confirmation that its bid is made as principal for the bidder's account and, if not, the basis upon which the bidder is acting, its identity and the identities of all other participants, if any.  Each initial bid

3

must also disclose any agreement or understanding between the bidder and any third party with respect to the subject assets or with respect to any possible transactions involving the Debtors.

The submission of any initial bid is deemed to be the bidder's consent for the Debtors to share any and all information submitted by such bidder with the U.S. Trustee, any landlord, any party to an executory contract to be assigned to such bidder and any other interested party. The Debtors will provide to Buyer's counsel, Robert Soriano, Greenberg Traurig, PA, Suite 100, 625 East Twiggs Street, Tampa, Florida 33602, copies of every bid immediately upon receipt.

If a bid conforms to the requirements herein and is acceptable to the Debtors, then the bidder shall be considered a Qualified Bidder and authorized to participate in the auction. The Buyer is a Qualified Bidder.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Buyer or any bidder may designate those executory contracts or unexpired leases they require Debtors to assume and assign pursuant to 11 U.S.C. § 365. The non-Debtor party to an executory contract or unexpired lease will be notified by the Debtors if those agreements are to be assumed and assigned and any amount to be paid as "cure." Any amounts to be paid as "cure" will be paid from the proceeds from the sale. If a non-Debtor party to an executory contract or unexpired lease objects to the assumption and assignment by the Debtors to the Buyer or any bidder or amounts to be paid as "cure", then that non-Debtor party must file an objection to the Sale Motion by 4:00 p.m. EST on [the date that is 2 days prior to the Sale Hearing] so that the objection is resolved at the Sale Hearing. If the objection only goes to the amount to be paid as "cure," then the Debtors will set a separate hearing with notice to the non-Debtor party to the executory contract or unexpired lease to consider the amount to be paid as "cure."

## AUCTION

If one or more qualified competing bids is timely received by the Debtors, an auction will be conducted in the Bankruptcy Court courtroom at the time of the hearing on the Sale Motion. Only the Buyer and Qualified Bidders shall be authorized to participate in the Auction. The Debtors may request that the Bankruptcy Court modify these Bid Procedures after notice and an opportunity to be heard given to the Buyer and any Qualified Bidders.

Subject to Bankruptcy Court approval, the Debtors may: (a) determine in their sole discretion which competing bid or initial bid, if any, is the highest or best offer with respect to the SuperStock Assets, and (b) reject in their sole discretion, any bid that, in the Debtors' sole discretion, is (i) inadequate or insufficient; (ii) not in conformity with the Bankruptcy Code, these Bid Procedures or the terms and conditions of sale, or (iii) contrary to the best issues of the Debtors, their estates and creditors. The Buyer shall be entitled to match any competing bid net of the Break-Up Fee and Expense Reimbursement Fee. If Buyer submits a Matching Bid, it shall be deemed the highest and best offer. Bids must be in increments of $50,000. The auction may be adjourned as the Debtors, in their sole discretion, deem appropriate. Reasonable notice of such adjournment and the time and place of the resumption of the auction shall be given to all participants at the auction.

## SALE HEARING

The Sale Hearing will be held at [_____] on [_____] at [_____]. Any objection to the Sale Motion must be in writing and filed with the Bankruptcy Court, with a copy served on Debtors' counsel, Foley & Lardner LLP, Buyer's counsel, _____ [and any others required under local rule or otherwise to receive notice] so as to be received by 4:00 p.m. EST on [the date that is 2 days prior to the Sale Hearing].

At the Sale Hearing, the Debtors will submit to the Bankruptcy Court the bid for the SuperStock Assets, which in their view constitutes the highest and best offer, and request that the Bankruptcy Court: (a) approve (i) the successful bid, (ii) the applicable purchase agreement, and (iii) if the sale includes any executory contract or unexpired lease, the proposed assumption and assignment of any executory contract or expired lease, and (b) authorize the Debtors to consummate the proposed transaction. If the sale includes any unexpired leases or executory contracts, the Bankruptcy Court shall also determine: (a) any cure amount for any cure required under 11 U.S.C. § 365(b) if the affected landlord or other non-Debtor party to the executory contract timely filed an objection to the Debtors' proposed cure; and, if applicable, (b) whether the Debtors have demonstrated adequate assurance of future performance under 11 U.S.C. § 365(b)(3) and § 365(f)(2).

## CLOSING OF SALE

The closing of the sale shall occur on the second business day after the Sale Order becomes final. The closing of the sale shall occur at the offices of Foley & Lardner LLP in Jacksonville, Florida.

If the successful bidder fails to consummate the successful bid in accords to the terms of its purchase agreement, the Debtors: (i) will retain the earnest money deposit of such bidder to the extent provided in the purchase agreement, and (ii) maintain the right to pursue all available remedies against the bidder. In such event, the Debtors may consummate the proposed transaction with the next highest or best bidder at the auction and consummate the transaction with such bidder at the highest-priced bid of such bidder at the auction without the need of further Bankruptcy Court approval, or, if the bidder is not able to consummate the transaction at

that price, the Debtors, in their discretion, may consummate the transaction with the next highest buyer, at the auction, and so forth.

Any bidder submitting bids will bear its expenses in connection with the sale, regardless of whether the sale is approved, in accordance with the terms of the applicable purchase agreement.

## ADDITIONAL CONDITIONS APPLICABLE TO THE INITIAL BID AND QUALIFIED COMPETING BIDS

Notwithstanding anything to the contrary in these procedures, the bid of the successful bidder will remain irrevocable and in accordance with the terms of the purchase agreement executed by the successful bidder. Notwithstanding the foregoing, the right of the Buyer shall be governed by the terms of its Purchase Agreement. If a bidder including the Buyer is not the successful bidder, then the Debtors shall return all earnest money deposits except for that from the successful bidder within 48 hours after the entry of the Sale Order.

## AS IS, WHERE IS

The proposed transfer of any of the Debtors' assets will be on an "As Is, Where Is" basis and without representations or warranties of any kind, nature or description by the Debtors, their agents or their estates, except to the extent set forth in the applicable purchase agreement of the successful bidder as accepted by the Debtors and approved by the Bankruptcy Court. Except as otherwise provided in the purchase agreement, all the Debtors' rights, title and interest in and to the SuperStock Assets will be transferred free and clear of all pledges, liens, security interest, encumbrances, claims, charges, options and interests, in accordance with Section 363 of the Bankruptcy Code.

JACK_1436777.3

The Buyer and each bidder shall be deemed to acknowledge and represent that it: (a) has had an opportunity to conduct due diligence regarding the assets prior to making its offers; (b) has relied solely upon its own independent review, investigation and/or inspection of any document, including without limitation, executory contracts and unexpired leases in making its bid; and (c) did not rely upon or receive any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, with respect to the SuperStock Assets, or the completeness of any information provided in connection with the SuperStock Assets or the auction except as expressly stated in the applicable purchase agreement.

## CONSENT TO JURISDICTION AS CONDITION TO BIDDING

All bidders at the auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the auction, the construction and enforcement of the purchase agreement and any matters relating to the bid or the sale of the SuperStock Assets.

## RESERVATION OF RIGHTS

Notwithstanding the Debtors' receipt of a bid, the Debtors may continue to negotiate and solicit offers for the assets, including package offers that encompass both the ArtSelect business assets and SuperStock Assets. The Debtors reserve the right in the exercise of their sole discretion, to enter agreements for the sale of any of their assets, either individually as part of the package prior to an auction, without further notice to any party. Notwithstanding anything to the contrary in these procedures, the Debtors also reserve the right in their sole discretion to reject any and all bids for the SuperStock Assets. Formal approval of a bid will not occur unless and until the Bankruptcy Court enters an order approving and authorizing Debtors to consummate the

transaction.  All bids are subject to Bankruptcy Court approval.  The Debtors retain all rights to any assets that are not subject to a bid accepted by the Debtors and approved by the Bankruptcy Court at the Sale Hearing.

JACK_1436777.3

# EXHIBIT B

# EXHIBIT B

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| a21, INC.,[1] | : | Case No. 03:08-bk-07610-PMG |
| | : | |
| ARTSELECT, INC., | : | Case No. 03:08-bk-07611-PMG |
| | : | |
| SUPERSTOCK, INC., | : | Case No. 03:08-bk-07612-PMG |
| | : | |
| Debtors. | : | (Joint Administration Requested) |
| | : | |

## NOTICE OF AUCTION AND SALE OF SUPERSTOCK ASSETS

Please take notice that on [date] at [time] the Bankruptcy Court shall conduct an auction and sale of substantially all the assets and business of Debtor, SuperStock, Inc., free and clear of liens and encumbrances.

Persons interested in bidding at the sale must submit a Qualified Bid with Deposit by [deadline] pursuant to Bid Procedures approved by the Bankruptcy Court. A copy of the Bid Procedures and further information about the assets being sold are available from LaDuane Clifton, CFO of the Debtors, 904.565.0066. The minimum bid for the SuperStock Assets shall be $1,750,000.

All objections to the proposed sale must be filed on or before [deadline] with the Bankruptcy Court. The hearing on the proposed sale shall be at [time and place].

---

[1] The Debtors have established an Internet website, http://www.a21group.com/bank.html to provide information regarding the bankruptcy case, including copies of Debtors' major pleadings and information for potential purchasers regarding the ArtSelect Assets and SuperStock Assets, the Bid Procedures and the Auction process. The tax identification numbers of the Debtors are as follows: a21, Inc. 74-2896910, ArtSelect, Inc. 42-1503076 and SuperStock, Inc. 13-2750088. The address of the principal offices of Debtors is: 7660 Centurion Parkway, Jacksonville, FL 32256.

Dated: Jacksonville, Florida
    December __, 2008

Respectfully submitted,

FOLEY & LARDNER LLP

/s/ Gardner F. Davis
Gardner F. Davis
    Florida Bar No. 0471712
    gdavis@foley.com
Michael B. Kirwan
    Florida Bar No. 0765244
    mkirwan@foley.com
John J. Wolfel, Jr.
    Florida Bar No. 030664
    jwolfel@foley.com
One Independent Drive, Suite 1300
Jacksonville, FL 32202-5017
P. O. Box 240
Jacksonville, FL 32201-0240
904.359.2000
and

Jennifer Hayes
Foley & Lardner LLP
Florida Bar No. 017325
jhayes@foley.com
100 North Tampa Street, Suite 2700
Tampa, FL 33602-5810
Phone: 813.229.2300

2

# EXHIBIT C

# EXHIBIT C

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| a21, INC.,[1] | : | Case No. 03:08-bk-07610-PMG |
| | : | |
| ARTSELECT, INC., | : | Case No. 03:08-bk-07611-PMG |
| | : | |
| SUPERSTOCK, INC., | : | Case No. 03:08-bk-07612-PMG |
| | : | |
| Debtors. | : | (Joint Administration Requested) |
| | : | |

## NOTICE OF ASSIGNMENT OF EXECUTORY CONTRACT
## IN CONNECTION WITH SALE OF SUPERSTOCK ASSETS

Please take notice that in connection with the proposed auction and sale of substantially all the SuperStock Assets, Debtor SuperStock, Inc. proposes to assume and assign the following contract:

[describe contract] (the "Contract").

The Contract will be assigned by the Debtor to Masterfile Corporation or, if a competing, qualified bid is received, to the successful purchaser of the assets of SuperStock at a Bankruptcy Court auction and sale to be conducted at [time and place].

The Debtor proposes to "cure" any defaults under the Contract, including any amounts owed pursuant to the Contract, by a lump sum payment of $_____ to _____ _____ at the closing of the sale.

---

[1]  The Debtors have established an Internet website, http://www.a21group.com/bank.html to provide information regarding the bankruptcy case, including copies of Debtors' major pleadings and information for potential purchasers regarding the ArtSelect Assets and SuperStock Assets, the Bid Procedures and the Auction process.  The tax identification numbers of the Debtors are as follows: a21, Inc. 74-2896910, ArtSelect, Inc. 42-1503076 and SuperStock, Inc. 13-2750088.  The address of the principal offices of Debtors is: 7660 Centurion Parkway, Jacksonville, FL 32256.

All objections to the proposed assignment and assumption of the Contract and proposed cure amount must be filed with the Bankruptcy Court on or before [deadline].  Objections regarding the assignment of the Contract will be heard and resolved at a Bankruptcy Court hearing on the proposed sale at [place and time].

If a competing bid is received, the auction shall be conducted pursuant to Bid Procedures approved by the Bankruptcy Court.  A copy of the Bid Procedures and further information about the assets being sold and the auction are available from LaDuane Clifton, CFO of the Debtors, 904.565.0066.

(Signature page follows)

Dated: Jacksonville, Florida
      December __, 2008

Respectfully submitted,

FOLEY & LARDNER LLP

/s/ Gardner F. Davis
Gardner F. Davis
   Florida Bar No. 0471712
   gdavis@foley.com
Michael B. Kirwan
   Florida Bar No. 0765244
   mkirwan@foley.com
John J. Wolfel, Jr.
   Florida Bar No. 030664
   jwolfel@foley.com
One Independent Drive, Suite 1300
Jacksonville, FL 32202-5017
P. O. Box 240
Jacksonville, FL 32201-0240
904.359.2000
and

Jennifer Hayes
Foley & Lardner LLP
Florida Bar No. 017325
jhayes@foley.com
100 North Tampa Street, Suite 2700
Tampa, FL 33602-5810
Phone: 813.229.2300

3

# EXHIBIT D

| In re: | : | Chapter 11 |
| | : | |
| a21, INC., | : | Case No. 03:08-bk-07610-PMG |
| | : | |
| ARTSELECT, INC., | : | Case No. 03:08-bk-07611-PMG |
| | : | |
| SUPERSTOCK, INC., | : | Case No. 03:08-bk-07612-PMG |
| | : | |
| Debtors. | : | (Joint Administration Requested) |
| | : | |

**ORDER (A) APPROVING BID PROCEDURES FOR SALE OF SUPERSTOCK ASSETS;
(B) SCHEDULING A HEARING TO CONSIDER THE SALE AND APPROVING
THE FORM AND MATTER OF NOTICES; (C) ESTABLISHING PROCEDURES
RELATING TO ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS,
INCLUDING NOTICE OF PROPOSED CURE AMOUNTS; (D) APPROVING
EXPENSE REIMBURSEMENT AND BREAK-UP FEE PROVISIONS; AND
(E) GRANTING RELATED RELIEF**

Upon the motion (the amended "Bid Procedures Motion") of Debtors a21, Inc. ("a21"),

SuperStock, Inc. ("SuperStock") and ArtSelect, Inc. ("ArtSelect," and together with a21 and

SuperStock, the "Debtors") requesting entry of an order (the "Bid Procedures Order") (A)

approving bid procedures which are attached as Exhibit A hereto (the "Bid Procedures") with

respect to the proposed sale (the "Proposed Sale") of substantially all of SuperStock's Assets, as

more fully set forth in that certain asset purchase agreement (the "Purchase Agreement") by and

between SuperStock and Masterfile Corporation ("Stalking Horse Bidder" or "Buyer"); (B)

scheduling a hearing (the "Sale Hearing") and approving the form and manner of notice of the

Court-supervised auction (the "Auction") and the Bid Procedures; (C) establishing procedures for

the potential assumption and assignment of certain executory contracts (the "Executory Contracts"

or the "Assumed Contracts"), including notice of proposed cure amounts; (D) authorizing Debtors

to pay to the Buyer an Expense Reimbursement (defined below) and Break-Up Fee (defined below) under certain terms and conditions set forth more particularly below; and (E) granting related relief; and the Court having determined at the hearing on the Bid Procedures Motion (the "<u>Hearing</u>") that, to the extent set forth herein, the relief requested in the Bid Procedures Motion is in the best interests of the Debtors, their estates, creditors and other parties in interest, it is hereby

ORDERED, ADJUDGED AND DECREED THAT:

1.     The Bid Procedures Motion is granted.

2.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105 and 363 and Bankruptcy Rules 2002 and 6004. Venue is proper in this district and Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The Debtors have articulated good and sufficient reasons for approving (1) the Bid Procedures, and (2) the form and manner of notice of the Bid Procedures and the Proposed Sale.

4.     The Bid Procedures are reasonable and appropriate.

5.     The Buyer has expended, and likely will continue to expend, considerable time, money and energy pursuing the Proposed Sale and has engaged in extended arm's length and good faith negotiations. The Purchase Agreement is the culmination of these efforts.

6.     The Bid Procedures attached hereto as <u>Exhibit A</u>, are hereby approved and shall apply with respect to the Proposed Sale of the SuperStock Assets. The Debtors are authorized to take any and all actions necessary to implement the Bid Procedures.

7.     Recognizing this expenditure of time, energy and resources, the Debtors have agreed to pay the Buyer a $100,000 break-up fee (the "<u>Break-Up Fee</u>") and a separate $150,000 expense reimbursement (the "<u>Expense Reimbursement</u>") (which is a lump sum payment and shall not

require proof of itemized expenses) on the terms and conditions set forth in the Purchase Agreement, which have been heavily negotiated pre-petition.

8. The Break-Up Fee and Expense Reimbursement are each (i) a material inducement for, and a condition of, the Buyer's entry into the Purchase Agreement, and (ii) fair and reasonable in view of the fact that, if the Break-Up Fee and Expense Reimbursement are triggered, the Buyer's efforts will have increased the chances that the Debtors will receive the highest or otherwise best offer for the SuperStock Assets.

9. The Bid Procedures were negotiated in good faith by the Debtors and the Buyer.

10. The Break-Up Fee and the Expense Reimbursement provisions in the Purchase Agreement are approved.

11. The Break-Up Fee and Expense Reimbursement shall be paid to Buyer (i) upon the closing of the Proposed Sale with another bidder other than the Buyer or (ii) if there is no closing of the Proposed Sale without fault of the Buyer and, in either case, within sixty (60) days of the petition date.

12. The Break-Up Fee and Expense Reimbursement, until paid, will constitute a superpriority administrative claim having priority over any and all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code.

13. The Court establishes [the date that is 5 days prior to the Sale Hearing] at 4:00 p.m. as the deadline for receipt of bids pursuant to the Bid Procedures (the "Bid Deadline"). A potential bidder that desires to make a bid to purchase the SuperStock Assets shall deliver written copies of its bid to counsel to the Debtors, c/o Foley & Lardner LLP, Attention: Gardner Davis, One Independent Drive, Suite 1300, Jacksonville, Florida 32202 not later than the Bid Deadline and shall comply with the requirements set forth in the Bid Procedures for making such bid. Bids not conforming with the Bid Procedures shall not be considered.

3

14.     The Sale Hearing shall be held before this Court on _____, 2008 at

_____ __.m. (Eastern Time), located in Jacksonville, Florida.

15.     As further described in the Bid Procedures, if a qualified bid other than the Buyer's

bid is timely received, the Auction will be held in the Bankruptcy Court at the time of the Sale

Hearing, and the Debtors shall notify the Buyer, all bidders submitting bids in conformity with the

Bid Procedures ("Qualified Bidders"), and the United States Trustee for the Middle District of

Florida that an auction will be held at that time.  Only the Buyer and Qualified Bidder(s) shall

participate in the Auction.

16.     Not later than five (5) business days after entry of this Bid Procedures Order, the

Debtors will serve the *Notice of Auction and Sale*, substantially in the form annexed hereto as

Exhibit B, to be sent by first-class mail, postage prepaid to (i) all entities that claim any interest in or

lien on the SuperStock Assets; (ii) all parties to the Assumed Contracts (provided notice may be five

days after Buyer's designation of intent to assume contract); (iii) all parties that filed requests for

notices under Bankruptcy Rule 9010(b); (iv) the Office of the United States Trustee for the Middle

District of Florida; and (v) the Securities and Exchange Commission.

17.     In addition, to facilitate the potential sale, the Debtors will serve a notice of the

potential Assumed Contracts and proposed cure amount therefor (the "Assignment Notice"),

substantially in the form attached hereto as Exhibit C hereto, not later than five (5) days from the

later of (x) entry of this Bid Procedures Order or (y) the Buyer's designation of an intent to assume

contract upon each counterparty to an Assumed Contract.  The Assignment Notice and

accompanying documentation shall reflect which Assumed Contracts the Debtors intend to assume

and assign to the Buyer in accordance with the Purchase Agreement.

18.     The Debtors will attach to the Assignment Notice their calculation of the undisputed

cure amounts that the Debtors believe must be paid to cure all prepetition defaults under the

4

Assumed Contracts. If no amount is listed on the Assignment Notice, the Debtors contend that there is no cure amount. Cure amounts will be paid by the Debtors.

19. Unless a party files and serves an objection to the (i) Proposed Sale; (ii) assumption and assignment of an Assumed Contract; or (iii) proposed amount to be paid as "cure" by 4:00 p.m., EST on [the date that is 2 days prior to the Sale Hearing] (the "Objection Deadline"), then the Debtors may, if the Proposed Sale is approved, assume and assign the Assumed Contracts to the Buyer or another bidder, and such party shall (i) be forever barred from objecting to the Proposed Sale; (ii) be forever barred from objecting to the assumption and assignment of Assumed Contracts to the Buyer or another bidder; (iii) be forever barred from objecting to the cure amount and from asserting any additional cure or other amounts owing with respect to such Assumed Contract, including, but not limited to, any defaults existing under such Assumed Contract and the Debtors shall be entitled to rely solely upon the cure amount; and (iv) be forever barred and estopped from asserting or making any claim against the Debtors, the Buyer, or such other bidder or any other assignee of the Assumed Contract.

20. Objections to the Proposed Sale, assumption and assignment of Assumed Contracts to the Buyer or another bidder, or the amount to be paid as "cure" will be heard at the Sale Hearing.

21. In the event that an objection to the Proposed Sale is directed solely to the cure amount for assumption and assignment of an Assumed Contract (the "Cure Amount Objection"), a separate hearing will be held on such other date as the Debtors may designate, with notice to the non-Debtor party. An Objection (i) must set forth the basis for the objection, (ii) must set forth, with specificity, the amount the party asserts should be paid as cure if warranted, and (iii) have attached to it appropriate documentation in support of the cure amount.

22. The Debtors' decision to assume and assign an Assumed Contract is subject to Court approval and consummation of the Proposed Sale of the SuperStock Assets. Absent consummation

of the Proposed Sale of the SuperStock Assets, each of the Assumed Contracts shall neither be deemed assumed nor assigned and shall in all respects be subject to further administration under the Bankruptcy Code.

23.     Except to the extent otherwise provided in the Purchase Agreement or the agreement with another bidder, and subject to payment by the Debtors of the cure amount determined by the Court (the "Cure Payment"), the Buyer or any other assignee of any Assumed Contract will not be subject to any liability to the Assumed Contract counterparty for claims that accrued or first arose before the closing date of the Proposed Sale of the SuperStock Assets, and the Debtors shall be relieved of all liability accruing or arising thereafter pursuant to Bankruptcy Code § 365(k). Debtors shall continue to be responsible for, and shall pay, all obligations, including all cure amounts due and owing, with respect to the Assumed Contracts during the Chapter 11 period until the closing date.

24.     Objections, if any, to the relief requested in the Sale Motion, including any objections under Section 365(b)(1)(c) of the Bankruptcy Code, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; (c) be filed with the Clerk of the Bankruptcy Court for the Middle District of Florida, Jacksonville Division, on or before the Objection Deadline; and (d) be served so as to be received no later than the Objection Deadline, as applicable, by Debtors' counsel and counsel to the Buyer.  The failure of any person to timely file its objection shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Sale Motion or the Debtors' assumption and assignment of any Assumed Contract or the consummation of the Proposed Sale of the SuperStock Assets and performance under the Purchase Agreement (or any alternative agreement entered into with another bidder), including the transfer of the SuperStock Assets free and clear of all liens, claims, encumbrances and interests (collectively,

the "Encumbrances") (other than permitted encumbrances provided for expressly in the Purchase Agreement or alternative purchase agreement entered into with another bidder).

25.     Deposits of the Buyer or another bidder closing upon the Proposed Sale shall be applied to the purchase price of such transaction at closing.  Deposits of all unsuccessful bidders shall be held in an interest-bearing escrow account until two (2) days after entry of the Sale Order and thereafter returned to the respective bidders.  If another bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such bidder, the Debtors shall be entitled to retain the deposit as part of their damages resulting from the breach or failure to perform.

26.     This Bid Procedures Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

27.     As provided by Bankruptcy Rules 6004(g) and 6006(d), this Order shall not be stayed for ten (10) days after the entry thereof and shall be effective and enforceable immediately upon its entry on this Court's docket.

28.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Bid Procedures Order.

Done and Ordered on December ___, 2008 at Jacksonville, Florida

_____
Paul M. Glenn
Chief United States Bankruptcy Judge

JACK_1439236.1

Exhibits:

A - Bid Procedures
B - Notice of Auction and Sale
C - Assignment Notice

Copies furnished to:

United States Trustee
135 West Central Boulevard
Suite 620
Orlando, FL 32801
United States of America

Susan R. Sherrill-Beard
Senior Trial Counsel/Bankruptcy
U.S. Securities and Exchange Commission
Atlanta Regional Office
3475 Lenox Road, NE, Suite 1000
Atlanta, GA 30326-1232
Direct Dial: (404) 842-7626
Fax: (404) 842-7633
Email: Sherrill-BeardS@sec.gov

D. Farrington Yates
Sonnenschein Nath & Rosenthal LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: 1.212.768.6878
Facsimile: 1.212.768.6800
Mobile: 1.917.324.0281
Email: fyates@sonnenschein.com

Robert Soriano
Greenberg Traurig
Suite 100
625 East Twiggs Street
Tampa Fl 22602
(813) 318-5700
Email: SorianoR@gtlaw.com

Jason Ward Johnson
Lowndes, Drosdick, Doster, Kantor & Reed, P.A.
450 South Orange Avenue, Suite 250
Orlando, Florida 32801

8

Telephone: 407-843-4600 ext. 216
Facsimile: 407-843-4444
Direct: 407-418-6216
e-mail: jason.johnson@lowndes-law.com

Debbie O'Donnell
Ahab Capital Management, Inc.
299 Park Avenue, 17th Floor
New York, NY 10171
ph: 212-653-1017
fax: 212-653-1099
email: do@ahabcap.com

Theodore Itzkowitz
Lowenstein Sandler PC
1251 Avenue of the Americas
New York, New York 10020
Tele: 646 414-6831
Fax: 973 422-6807
titzkowitz@lowenstein.com

Alan M. Weiss
Holland & Knight LLP
50 North Laura Street Suite 3900
Jacksonville, FL  32202
(904) 798-5459
alan.weiss@hklaw.com

Gordon P. Black, Esq.
Corporate Counsel
Applejack Art Partners, Inc.
P.O. Box 1527
Manchester Center, VT 05255
Phone: (802) 362-3662
Fax: (802) 549-8004

Gardner Davis
Foley & Lardner LLP
One Independent Drive, Suite 1300
Jacksonville, FL 32202
Telephone: (904) 359-8726
Facsimile: (904) 359-8700
Email: gdavis@foley.com