UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                               :
                                     :
a21, INC., *et al.*,                 :        Case No. 03:08-bk-07610-PMG
                                     :
            Debtors.                 :        Chapter 11
                                     :
                                     :        Jointly Administered with cases 03:08-
                                     :        bk-07611-PMG and
                                     :        03:08-bk-07612-PMG
                                     :
_____:

## ORDER: (A) APPROVING ARTSELECT ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF ARTSELECT'S ASSETS OUTSIDE THE ORDINARY COURSE OF BUSINESS; (B) AUTHORIZING THE SALE OF ARTSELECT ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES; AND (C) GRANTING RELATED RELIEF

Upon the motion, dated December 4, 2008 (the "Sale Motion"), of a21, Inc. ("a21"),

ArtSelect, Inc. ("ArtSelect") and SuperStock, Inc. ("SuperStock," and together with a21 and

ArtSelect, the "Debtors") for the entry of an order pursuant to Sections 105, 363 and 365 of Title

11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006 and 9014 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the Debtors to,

*inter alia*, (i) enter into that certain Asset Purchase Agreement, dated as of January 12, 2009,

between Art.com, Inc., a Delaware corporation (the "Purchaser"), and ArtSelect (the "Seller")

(the "Agreement," attached hereto as Exhibit A), (ii) sell substantially all of their assets free and

clear of all Encumbrances,[1] with such sale to be in accordance with the terms and conditions of

_____

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Sale Motion, the Agreement, or the *Order (A) Approving Bid Procedures for Sale of ArtSelect Assets; (B) Scheduling a Hearing to Consider the Sale and Approving the Form and*

the Agreement; and (iii) granting related relief; and this Court having entered an order dated December 29, 2008 (the "Bid Procedures Order" and attached as Exhibit A thereto, the "Bid Procedures") authorizing the Debtors to conduct, and approving the terms and conditions of, the Auction and Bid Procedures to consider higher or otherwise better offers for the Assets, establishing a date for the Auction, and approving, *inter alia*, (i) the Bid Procedures in connection with the Auction; (ii) the form and manner of notice of the Auction and Bid Procedures; and (iii) the Expense Reimbursement and the Break-up Fee; and the Court having established the date of the Sale Hearing; and the Court having jurisdiction to consider the Sale Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(2) and 1334; and consideration of the Sale Motion, the relief requested therein, and the responses thereto, if any, being a core proceeding in accordance with 28 U.S.C. § 157(b); and the appearance of all interested parties and all responses and objections, if any, to the Sale Motion having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing, and all other pleadings and proceedings in this case, including the Sale Motion; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and after due deliberation and sufficient cause appearing therefore;

---

*Manner of Notices; (C) Establishing Procedures Relating to Assumption and Assignment of Certain Contracts, Including Notice of Proposed Cure Amounts; (D) Approving Expense Reimbursement and Break-Up Fee Provisions; and (E) Granting Related Relief.*

**IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:**[2]

A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.    To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.    To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.    The Court has jurisdiction over this matter and over the property of the Debtors, including the Assets to be sold, transferred or conveyed pursuant to the Agreement, and their respective estates pursuant to 28 U.S.C. §§ 157 and 1334.    This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).    Venue of these Chapter 11 cases and the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    The statutory predicates for the relief sought in the Sale Motion and the basis for the approvals and authorizations herein are (i) Bankruptcy Code Sections 102, 105, 363, 365, 1123, 1141 and 1146, and (ii) Bankruptcy Rules 2002, 6004, 6006 and 9014.

E.    This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).    To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure as made applicable by Rule 7054 of the Federal Rules of Bankruptcy Procedure, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

---

[2] All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are hereby incorporated herein to the extent not inconsistent herewith.

F.     On December 4, 2008 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have continued in possession and management of their businesses and properties as debtors-in-possession pursuant to Bankruptcy Code Sections 1107(a) and 1108.

G.     As evidenced by the affidavits of service filed with the Court, proper, timely, adequate, and sufficient notice of the Sale Motion, the Auction, and the Sale Hearing have been provided in accordance with Bankruptcy Code Sections 102(1) and 363(b), Bankruptcy Rules 2002, 6004, 9006, 9007, 9008 and 9014, the local rules of this Court, the procedural due process requirements of the United States Constitution, and in compliance with the Bid Procedures Order. No other or further notice of the Sale Motion, the Auction, the Sale Hearing, or of the entry of this Order is necessary or shall be required.

H.     A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities, including, without limitation, (i) all entities that claim any interest in or lien upon the Assets; (ii) all governmental taxing authorities that have, or as a result of the sale of the Assets may have, claims, contingent or otherwise, against the Debtors; (iii) all parties that filed requests for notices under Bankruptcy Rule 9010(b) or were entitled to notice under Bankruptcy Rule 2002; (v) all known creditors (whether liquidated, contingent or unmatured) of the Debtors; (vi) the Securities and Exchange Commission; (vii) the Office of the United States Trustee; and (viii) counsel to the Debtors' pre- and post-petition secured lenders. Other parties interested in bidding on the Assets were provided, upon request, sufficient information to make an informed judgment on whether to bid on the Assets.

JACK_1433855.6

I.     The Debtors have demonstrated a sufficient basis and the existence of exigent circumstances for them to enter into the Agreement and sell the Assets under Bankruptcy Code Sections 363, 365, 1123 and 1141, and such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors, their estates and their creditors.

J.     The Bid Procedures set forth in the Bid Procedures Order were non-collusive, substantively and procedurally fair to all parties and were the result of arms length negotiations between the Debtors and the Purchaser.

K.     The Debtors and their professionals have complied, in good faith, in all respects with the Bid Procedures Order. As demonstrated by the testimony and other evidence proffered or adduced at the Sale Hearing through marketing efforts and a competitive sale process conducted in accordance with the Bid Procedures Order, the Debtors (i) afforded interested potential purchasers a full, fair and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase all of the Debtors' assets, and (ii) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Assets.

L.     The Bid Procedures obtained the highest value for the Assets for the Debtors and their estates.

M.     The offer of the Purchaser, upon the terms and conditions set forth in the Agreement, including the form and total consideration to be realized by the Debtors pursuant to the Agreement, (i) is the highest and best offer received by the Debtors; (ii) is fair and reasonable; (iii) is in the best interests of the Debtors' creditors and estates; (iv) constitutes full and adequate consideration and reasonably equivalent value for the Assets; and (v) will provide a

greater recovery for the Debtors' creditors and other interested parties than would be provided by any other practically available alternative.

N.     The Purchaser is not an "insider" or "affiliate" of the Debtors as those terms are defined in the Bankruptcy Code. The Purchaser is a Purchaser in good faith, as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the protections of Bankruptcy Code Sections 363(m) and (n) with respect to all of the Assets. The Agreement was negotiated and entered into in good faith, based upon arm's length bargaining, and without collusion or fraud of any kind. Neither the Debtors nor the Purchaser has engaged in any conduct that would prevent the application of Bankruptcy Code Section 363(m) or cause the application of or implicate Bankruptcy Code Section 363(n) to the Agreement or to the consummation of the sale transaction. The Purchaser is entitled to all the protections and immunities of Bankruptcy Code Section 363(m).

O.     The Debtors have full corporate power and authority to execute the Agreement and all other documents contemplated thereby, and the sale of the Assets has been duly and validly authorized by all necessary corporate authority by the Debtors to consummate the transactions contemplated by the Agreement. No consents or approvals, other than as may be expressly provided for in the Agreement, are required by the Debtors to consummate such transactions.

P.     The Debtors have advanced sound business reasons for seeking to enter into the Agreement and to sell and/or assume and sell and assign the Assets, as more fully set forth in the Sale Motion and as demonstrated at the Sale Hearing, and it is a reasonable exercise of the Debtors' business judgment to sell the Assets and to consummate the transactions contemplated

by the Agreement. Notwithstanding any requirement for approval or consent by any person, the transfer of the Assets to the Purchaser is a legal, valid and effective transfer of the Assets.

Q.   The terms and conditions of the Agreement, including the consideration to be realized by the Debtors pursuant to the Agreement, are fair and reasonable, and the transactions contemplated by the Agreement are in the best interests of the Debtors' estates.

R.   Except as otherwise provided in the Agreement, the Assets shall be sold free and clear of all Liens, Claims, Encumbrances and Interests with such Liens, Claims, Encumbrances and Interests to attach to the consideration to be received by the Debtors in the same priority and subject to the same defenses and avoidability, if any, as before the Closing, and Purchaser would not enter into the Agreement to purchase the Assets otherwise.

S.   The transfer of the Assets to Purchaser will be a legal, valid and effective transfer of the Assets, and, except as may otherwise be provided in the Agreement, shall vest Purchaser with all right, title and interest of the Debtors to the Assets free and clear of any and all Liens, Claims, Encumbrances and Interests. Except as specifically provided in the Agreement or this Order, the Purchaser shall not assume or become liable for any Liens, Claims, Encumbrances and Interests relating to the Assets being sold by the Debtors.

T.   The transfer of the Assets to the Purchaser free and clear of all Liens, Claims, Encumbrances and Interests will not result in any undue burden or prejudice to any holders of any Liens, Claims, Encumbrances and Interests as all such Liens, Claims, Encumbrances and Interests of any kind or nature whatsoever shall attach to the net proceeds of the sale of the Assets received by the Debtors in the order of their priority, with the same validity, force and

effect which they now have as against the Assets and subject to any claims and defenses the Debtors or other parties may possess with respect thereto. All persons having Liens, Claims, Encumbrances or Interests of any kind or nature whatsoever against or in any of the Debtors or the Assets shall be forever barred estopped and permanently enjoined from pursuing or asserting such Liens, Claims, Encumbrances or Interests against the Purchaser, any of its assets, property, successors or assigns, or the Assets.

U. The Debtors may sell the Assets free and clear of all Liens, Claims, Encumbrances and Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in Bankruptcy Code Section 363(f) has been satisfied. Those (i) holders of Liens, Claims, Encumbrances and Interests and (ii) non-debtor parties, who did not object, or who withdrew their objections, to the sale of the Assets and the Sale Motion are deemed to have consented pursuant to Bankruptcy Code Section 363(f)(2). All objections to the Sale Motion have been resolved. Those holders of Liens, Claims, Encumbrances and Interests who did object fall within one or more of the other subsections of Bankruptcy Code Section 363(f) and are adequately protected by having their Liens, Claims, Encumbrances and Interests, if any, attach to the proceeds of the sale of the Assets ultimately attributable to the property against or in which they claim or may claim any Claims, Encumbrances and Interests.

V. Not selling the Assets free and clear of all Liens, Claims, Interests and Encumbrances would adversely impact the Debtors' estates, and the sale of Assets other than one free and clear of all Liens, Claims, Interests and Encumbrances would be of substantially less value to the Debtors' estates.

W. The Purchaser will be acting in good faith, pursuant to Bankruptcy Code Section 363(m), in closing the transactions contemplated by the Agreement at any time on or after the

entry of this Order and cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(g) and 6006(d).

X.     The transactions contemplated under the Agreement do not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Purchaser and the Debtors, there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the Debtors or their estates, there is no common identity of incorporators, directors or stockholders between the Debtors and Purchaser, Purchaser is not holding itself out to the public as a continuation of the Debtors and the Purchaser does not constitute a successor to the Debtors or their estates.

Y.     The sale of the Assets outside of a plan of reorganization pursuant to the Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors. The sale does not constitute a *sub rosa* Chapter 11 plan.

Z.     The total consideration provided by the Purchaser for the Assets is the highest and best offer received by the Debtors, and the Purchase Price ($1,635,884.00) constitutes (a) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act and (c) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia, for the Assets.

AA.     Time is of the essence in consummating the sale. In order to maximize the value of the Assets, it is essential that the sale of the Assets occur within the time constraints set forth

in the Agreement. Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004 and 6006.

BB.    The Purchaser shall have no obligations with respect to any liabilities of the Debtors other than its obligations under the Agreement.

CC.    For purposes of section 363(b)(1) of the Bankruptcy Code, the Debtors have not, in connection with offering a product or service, disclosed to any individual a policy prohibiting the transfer of "personally identifiable information" (as defined in section 101(41A) of the Bankruptcy Code) about individuals to persons that are not affiliated with the Debtors.

**NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    The relief requested in the Sale Motion is granted in its entirety, subject to the terms and conditions contained herein.

2.    All objections, responses, and requests for continuance concerning the Sale Motion are resolved in accordance with the terms of this Order and as set forth in the record of the Sale Hearing. To the extent any such objection, response or request for continuance was not otherwise withdrawn, waived, or settled, it, and all reservations of rights contained therein, is overruled and denied.

3.    Notice of the Sale Hearing was fair and equitable under the circumstances and complied in all respects with 11 U.S.C. § 102(1) and Bankruptcy Rules 2002, 6004 and 6006.

4.    The sale of the Assets, the terms and conditions of the Agreement (including all schedules and exhibits affixed thereto), the bid by the Purchaser and the transactions contemplated thereby be, and hereby are, authorized and approved in all respects.

5. The sale of the Assets and the consideration provided by the Purchaser under the Agreement is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

6. The Purchaser is hereby granted and is entitled to all of the protections provided to a good faith Purchaser under Bankruptcy Code Section 363(m).

7. Subject to the terms of the Agreement, the Debtors be, and hereby are, authorized, to assume, perform under, consummate and implement the terms of the Agreement together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Agreement, this Order and sale of the Assets contemplated thereby including, without limitation, deeds, assignments, stock powers and other instruments of transfer, and to take all further actions as may reasonably be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser, or reducing to possession any or all of the Assets, as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Agreement, without any further corporate action or orders of this Court. The Purchaser shall have no obligation to proceed with the Closing of the Agreement until all conditions precedent to its obligations to do so have been met, satisfied or waived.

8. The Debtors and each other person or entity having duties or responsibilities under the Agreement, any agreements related thereto or this Order, and their respective directors, officers, employees, members, agents, representatives, and attorneys, are authorized and empowered and directed, subject to the terms and conditions contained in the Agreement, to carry out all of the provisions of the Agreement and any related agreements; to issue, execute,

deliver, file, and record, as appropriate, the documents evidencing and consummating the Agreement, and any related agreements; to take any and all actions contemplated by the Agreement, any related agreements or this Order; and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents and to perform such other acts and execute and deliver such other documents, as are consistent with, and reasonably necessary or appropriate to implement, effectuate, and consummate, the Agreement, any related agreements and this Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Court or further action by their respective directors, officers, employees, members, agents, representatives, and attorneys, and with like effect as if such actions had been taken by unanimous action of the respective directors, officers, employees, members, agents, representatives, and attorneys of such entities. The secretary or any assistant secretary of the Debtors shall be, and hereby is, authorized and directed to certify or attest to any of the foregoing actions (but no such certification or attestation shall be required to make any such action valid, binding, and enforceable). The Debtors are further authorized, empowered and directed to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the Agreement, any related agreements and this Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate. The execution of any such document or the taking of

any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act.

9. Effective as of the Closing, the sale of the Assets by the Debtors to the Purchaser shall constitute a legal, valid and effective transfer of the Assets notwithstanding any requirement for approval or consent by any person and shall vest Purchaser with all right, title and interest of the Debtors in and to the Assets, free and clear of all Claims, Liens, Interests and Encumbrances of any kind, pursuant to Bankruptcy Code Section 363(f).

10. The sale of the Assets is not subject to avoidance pursuant to Bankruptcy Code Section 363(n).

11. Except to the extent specifically provided in the Agreement, upon the closing, the Debtors shall be, and hereby are, authorized, empowered and directed, pursuant to Bankruptcy Code Sections 105, 363(b), to sell the Assets to the Purchaser. The sale of the Assets shall vest Purchaser with all right, title and interest of the Debtors to the Assets free and clear of any and all Claims, Liens, Interests and Encumbrances and other liabilities and claims, whether secured or unsecured, choate or inchoate, filed or unified, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, or known or unknown, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity or otherwise, with all such Claims, Liens, Interests and Encumbrances to attach only to the proceeds of the sale with the same priority, validity, force, and effect, if any, as they now have in or against the Assets, subject to all claims and defenses the Debtors may possess with respect thereto. Following the Closing Date, no holder of any Claims, Liens, Interests and Encumbrances in the Assets shall interfere with the Purchaser's use and enjoyment of the Assets

based on or related to such Claims, Liens, Interests and Encumbrances, or any actions that the Debtors may take in their Chapter 11 cases and no person shall take any action to prevent, interfere with or otherwise enjoin consummation of the transactions contemplated in or by the Agreement or this Order.

12. The provisions of this Order authorizing the sale of the Assets free and clear of Liens, Claims, Encumbrances and Interests shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order. However, subject to the terms of the Agreement the Debtors and the Purchaser, and each of their respective officers, employees and agents are hereby authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtors or the Purchaser deem reasonably necessary or appropriate to implement and effectuate the terms of the Agreement and this Sale Order. Moreover, effective as of the Closing, the Purchaser, its successors and assigns, shall be designated and appointed the Debtors' true and lawful attorney and attorneys with respect to the Assets, with full power of substitution, in the Debtors' name and stead, on behalf and for the benefit of the Purchaser, its successors and assigns, to demand and receive any and all of the Assets and to give receipts and releases for and in respect of the Assets, or any part thereof, and from time to time to institute and prosecute the Debtors' name, for the benefit of the Purchaser, its successors and assigns, any and all proceedings at law, in equity or otherwise, which the Purchaser, its successors and assigns, may deem proper for the collection or reduction to possession of any of the Assets, and to do all acts and things with respect to the Assets which the Purchaser, its successors and assigns, shall deem

reasonably desirable. The foregoing powers are coupled with an interest and are and shall be irrevocable by the Debtors.

13.     Upon the Closing Date, the Debtors' creditors are authorized and directed to execute such documents and take all other actions as may be necessary to release any Encumbrances of any kind against the Assets, as such Encumbrances may have been recorded or may otherwise exist. If any person or entity that has filed financing statements or other documents or agreements evidencing any Liens, Claims, Encumbrances or Interests in or against the Assets shall not have delivered to the Debtors prior to the Closing after request therefor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such Liens, Claims, Encumbrances or Interests that the person or entity has with respect to the Assets, the Debtors are hereby authorized and directed to execute and file such statements, and empowered to perform under, all instruments, releases and other documents on behalf of the person or entity with respect to such Assets prior to the Closing, and the Purchaser is authorized to file such documents after Closing.

14.     To the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date.

15.     All of the Debtors' interests in the Assets to be acquired by the Purchaser under the Agreement shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in the Purchaser. Upon the occurrence of the Closing, this Order shall be considered and constitute for any and all purposes a full and complete general assignment,

conveyance and transfer of the Assets acquired by the Purchaser under the Agreement and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Assets to the Purchaser.

16.     To the extent permitted by applicable law, except as expressly provided in the Agreement, the Purchaser is not assuming nor shall it or any affiliate of Purchaser be in any way liable or responsible, as a successor or otherwise, for any liabilities, debts, or obligations of the Debtors in any way whatsoever relating to or arising from the Debtors' ownership or use of the Assets prior to the consummation of the transactions contemplated by the Agreement, or any liabilities calculable by reference to the Debtors or their operations or the Assets, or relating to continuing or other conditions existing on or prior to consummation of the transactions contemplated by the Agreement, which liabilities, debts, and obligations are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against Purchaser or any affiliate of the Purchaser.

17.     Except as otherwise provided in the Agreement, upon the Closing Date, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release their respective Interests or Claims against the Assets, if any, as may have been recorded or may otherwise exist.

18.     Except as otherwise expressly provided in the Agreement, all persons or entities presently on or after the Closing Date in possession of some or all of the Assets are directed to surrender possession of the Assets to the Purchaser on the Closing Date, or at such time thereafter as the Purchaser may request.

19.    Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement and this Order.

20.    The Purchaser has not assumed or is otherwise not obligated for any of the Debtors' liabilities other than as set forth in the Agreement, and the Purchaser has not purchased any of the Excluded Assets.  Consequently, all persons, Governmental Units (as defined in Bankruptcy Code Sections 101(27) and 101(41)) and all holders of Claims, Liens, Interests or Encumbrances based upon or arising out of liabilities retained by the Debtors are hereby enjoined from taking any action against the Purchaser or the Assets to recover any Claims, Liens, Interests or Encumbrances or on account of any liabilities of the Debtors pursuant to the Agreement.  All persons holding or asserting any Interest in the Excluded Assets are hereby enjoined from asserting or prosecuting such Claims, Liens, Interests or Encumbrances or cause of action against the Purchaser or the Assets for any liability associated with the Excluded Assets.

21.    The Purchaser is not a "successor" to the Debtors or their estates by reason of any theory of law or equity, and the Purchaser shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law, successor liability or similar liability except as otherwise expressly provided in the Agreement.  Except as provided for under the Agreement, neither the purchase of the Assets by the Purchaser, nor the fact that the Purchaser is using any of the Assets previously operated by the Debtors, will cause the Purchaser to be deemed a successor in any respect to the Debtors' businesses within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, environmental, or other law, rule or

regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, or under any product warranty liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine. Purchaser shall have no liability or obligation under the WARN Act 929 U.S.C. §§ 210 et seq.) or the Comprehensive Environmental Response Compensation and Liability Act, or any foreign, federal, state or local labor, employment, or environmental law by virtue of the Purchaser's purchase of the Assets.

22.     Pursuant to Bankruptcy Code Section§ 105 and 363, all persons and entities, including, but not limited to, the Debtors, all debt security holders, equity security holders, the Debtors' employees or former employees, governmental, tax and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding a Lien, Claim, Encumbrance or Interest of any kind or nature whatsoever against, in or with respect to any of the Debtors or the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtors, the Assets, the operation of the Debtors' businesses prior to the Closing Date or the transfer of the Assets to the Purchaser, shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such Lien, Claim, Encumbrance or Interest against the Purchaser or any affiliate, successor or assign thereof and each of their respective current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, affiliates and representatives (each of the foregoing in its individual capacity), or the Assets.

23. Subject to the terms of the Agreement, the Agreement and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtors and the Purchaser, without further action or order of the Court; provided, however, that any such waiver, modification, amendment, or supplement is not material and substantially conforms to, and effectuates, the Agreement and any related agreements.

24. The failure specifically to include any particular provisions of the Agreement or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtors and the Purchaser that the Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to Closing.

25. No bulk sale law or any similar law of any state or other jurisdiction shall apply in any way to the sale and the transactions contemplated by the Agreement.

26. To the extent any provisions of this Order conflict with the terms and conditions of the Agreement, this Order shall govern and control.

27. Nothing in this Order shall alter or amend the Agreement and the obligations of the Debtors and Purchaser thereunder.

28. This Order and Agreement shall be binding upon and govern the acts of all Persons and entities, including without limitation, the Debtors and the Purchaser, their respective successors and permitted assigns, including, without limitation, any Chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a Chapter 7 case if this case is converted from Chapter 11, all creditors of any Debtor (whether known or unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office or

19

contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Assets.

29. The provisions of this Order are non-severable and mutually dependent.

30. Nothing in any order of this Court or contained in any plan of reorganization or liquidation confirmed in the Chapter 11 Cases, or in any subsequent or converted cases of the Debtors under Chapter 7 or Chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.

31. Notwithstanding Bankruptcy Rules 6004, 6006 and 7062, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Purchaser are free to close under the Agreement at any time, subject to the terms of the Agreement. In the absence of any person or entity obtaining a stay pending appeal, if the Debtors and the Purchaser close under the Agreement, the Purchaser shall be deemed to be acting in "good faith" and shall be entitled to the protections of Bankruptcy Code Section 363(m) as to all aspects of the transactions under and pursuant to the Agreement if this Order or any authorization contained herein is reversed or modified on appeal.

32. This Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order, the Bid Procedures Order, the Agreement in all respects and to decide any disputes concerning this Order, the Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Agreement and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Assets and all issues and disputes arising in connection with the relief

20

authorized herein, inclusive of those concerning the transfer of the assets free and clear of all

Liens, Claims, Interests and Encumbrances.

**DONE and ORDERED** on January 28, 2009 in Jacksonville, Florida.


_____
Paul M. Glenn
Chief United States Bankruptcy Judge


Copies furnished to:

United States Trustee
135 West Central Boulevard
Suite 620
Orlando, FL 32801
United States of America


Susan R. Sherrill-Beard
Senior Trial Counsel/Bankruptcy
U.S. Securities and Exchange Commission
Atlanta Regional Office
3475 Lenox Road, NE, Suite 1000
Atlanta, GA 30326-1232
Direct Dial: (404) 842-7626
Fax: (404) 842-7633
Email: Sherrill-BeardS@sec.gov

D. Farrington Yates
Sonnenschein Nath & Rosenthal LLP
1221 Avenue of the Americas
New York, New York 10020

JACK_1433855.6

Telephone: 1.212.768.6878
Facsimile: 1.212.768.6800
Mobile: 1.917.324.0281
Email: fyates@sonnenschein.com

Robert Soriano
Greenberg Traurig
Suite 100
625 East Twiggs Street
Tampa Fl 22602
(813) 318-5700
Email: SorianoR@gtlaw.com

Jason Ward Johnson
Lowndes, Drosdick, Doster, Kantor & Reed, P.A.
450 South Orange Avenue, Suite 250
Orlando, Florida 32801
Telephone: 407-843-4600 ext. 216
Facsimile: 407-843-4444
Direct: 407-418-6216
e-mail: jason.johnson@lowndes-law.com

Debbie O'Donnell
Ahab Capital Management, Inc.
299 Park Avenue, 17th Floor
New York, NY 10171
ph: 212-653-1017
fax: 212-653-1099
email: do@ahabcap.com

Theodore Itzkowitz
Lowenstein Sandler PC
1251 Avenue of the Americas
New York, New York 10020
Tele: 646 414-6831
Fax: 973 422-6807
titzkowitz@lowenstein.com

Alan M. Weiss
Holland & Knight LLP
50 North Laura Street Suite 3900
Jacksonville, FL 32202
(904) 798-5459
alan.weiss@hklaw.com

Gordon P. Black, Esq.

22

Corporate Counsel
Applejack Art Partners, Inc.
P.O. Box 1527
Manchester Center, VT 05255
Phone: (802) 362-3662
Fax: (802) 549-8004

Gardner Davis
Foley & Lardner LLP
One Independent Drive, Suite 1300
Jacksonville, FL 32202
Telephone: (904) 359-8726
Facsimile: (904) 359-8700
Email: gdavis@foley.com

JACK_1433855.6

**EXHIBIT A**
**(see attached)**

JACK_1433855.6

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (the "Agreement") is made as of the 12th day of January, 2009, by and between ArtSelect, Inc, a Delaware corporation ("Seller") and Art.com, Inc., a Delaware corporation ("Purchaser"). Each of Seller and Purchaser may hereafter be referred to as a "Party" and collectively as the "Parties".

## RECITALS

WHEREAS, Seller is engaged in the business of selling home and office framed and unframed wall décor to retailers, catalogers, membership organizations and consumers through both online and traditional retail and wholesale distribution channels;

WHEREAS, Seller's primary business assets include inventory consisting primarily of print reproductions and picture frames, website and technology that permits business partners to create branded sub-domains on Seller's website, and two leased facilities in Fairfield, Iowa;

WHEREAS, Seller and a21, Inc, ("Parent") have experienced substantial financial difficulties and have determined that it is in the best interest of Seller and Parent to file for bankruptcy protection and sell the business and assets of Seller as a going concern free and clear of all liens and encumbrances.

WHEREAS, the Seller filed a petition for bankruptcy protection on December 4, 2008 (the "Filing Date" and Seller's Bankruptcy case is referred to as (the "Bankruptcy Case"), under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court");

WHEREAS, Seller desires to sell to Purchaser, and Purchaser desires to purchase from Seller, selected assets free and clear of all debts, claims, liens, taxes, mortgages, and any other liabilities of the Seller pursuant to 11 U.S.C. §363(b) and (f).

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the Parties agree as follows:

## ARTICLE 1

### Definitions and References

"Affiliate" has the meaning ascribed to such term in the Bankruptcy Code.

"Agreement Date" means the first date upon which this Agreement has been mutually executed and delivered by Seller and Purchaser.

"Ancillary Documents" means all documents, instruments and agreements executed and delivered pursuant to the terms of this Agreement including, without limitation, the Bill of Sale and the Assignment of Intellectual Property described in Section 4.4(a)

"Bankruptcy Case" is defined in the recitals.

"Bankruptcy Code" is defined in the recitals.

"Bankruptcy Court" is defined in the recitals.

"Business Day" means any day that is not a Saturday, Sunday or a day on which the commercial banks in Jacksonville, Florida are required or permitted to; be closed.

"Claims" has the meaning set forth in Section 2.1.

"Closing" means the consummation of the sale of certain assets to Purchaser pursuant to Section 4.2 hereof.

"Closing Date" means the date upon which a Closing occurs as set forth in Section 4.2 of this Agreement.

"Encumbrances" shall mean any mortgage, pledge, lien (statutory or otherwise), security interest, warehouseman's lien, landlord's lien, easement, right of way, covenant, claim, restriction, right, option, conditional sale or other title retention agreement, charge or encumbrance of any kind or nature.

"Equipment" has the meaning set forth in Section 2.2(a).

"Excluded Assets" has the meaning set forth in Section 2.4.

"Filing Date" is defined in the recitals.

"Governmental Entity" means any court, administrative agency or commission or other governmental authority or instrumentality, domestic or foreign.

"Intellectual Property" has the meaning set forth in Section 2.2(a).

"Inventory" has the meaning set forth in Section 2.2(c).

"Knowledge" of a Person which is not an individual means the actual knowledge (as of the date(s) of the relevant representation) of the executive officers and directors of such Person.

"Landlord" has the meaning set forth in Section 2.3.

"Law" means any federal, state, local or foreign law, statute, rule, regulation or ordinance of any Governmental Entity.

"Lease" has the meaning set forth in Section 2.3, including, without limitation, all of Seller's right, title and interest of whatever type or nature thereunder, including without limitation, all occupancy and possessory rights, and all rights to leasehold improvements, guarantees, insurance proceeds (exclusive of deductibles or self-insured retention amounts) credits, prepaid expenses, security deposits, subrent, refunds, escrow accounts, condemnation rights and awards and all proceeds therefrom, reciprocal easement agreements, nondisturbance

agreements, development and other ancillary agreements relating to such Lease, and all other interests of Seller thereunder.

"Permitted Encumbrances" means (A) statutory liens for current taxes or other governmental charges with respect to Seller's real property not yet due and payable or the amount or validity of which is being contested; (B) mechanics, carriers, workers, repairers and similar statutory liens arising or incurred in the ordinary course of business for amounts which are not delinquent and which could not, individually or in the aggregate, have a material adverse effect; (C) zoning, entitlement, building and other land use regulations imposed by governmental agencies having jurisdiction over Seller's real property which are not violated by the current use and operation of such real property; (D) covenants, conditions, restrictions, easements and other matters of record affecting title to Seller's real property which do not unreasonably interfere with the current use, occupancy, or value, or the marketability of title, of such real property; and (E) any other Encumbrances which will be discharged in connection with the Sale Order or any other actions of the Bankruptcy Court.

"Person" means any individual, partnership, joint venture, firm, corporation, limited liability company, association, trust or other enterprise, or any government or political subdivision or any agency, department or instrumentality thereof.

"Premises" has the meaning set forth in Section 2.3.

"Price Allocation" has the meaning set forth in Section 4.5.

"Purchased Assets" has the meaning set forth in Section 2.2.

"Sale Order" means the order of the Bankruptcy Court approving this Agreement and the sale by Seller to Purchaser of the Purchased Assets, free and clear of all liens and interests in the property pursuant to Bankruptcy Code Section 363(f) and (m) and authorizing the assumption and assignment of the Assumed Contracts pursuant to Bankruptcy Code Section 365.

"Taxes" means all taxes, charges, fees, duties, levies or other assessments, including, without limitation, income, gross receipts, net proceeds, ad valorem, real and personal property (tangible and intangible), sales, use, franchise, excise, value added, payroll, unemployment, stamp, leasing, lease, user, transfer, occupational, employees' income withholding and Social Security taxes imposed on the Sale by the United States or any other country or by any state, municipality, subdivision or instrumentality of the United States or of any other country or by any other tax authority, including all applicable penalties and interest.

"Tax Return" means any report, return or other information required to be supplied by Seller to a taxing authority in connection with Taxes.

"Termination Date" has the meaning set forth in Section 9.2(e).

# ARTICLE 2

## Purchase and Sale of Assets

Section 2.1.   <u>Agreement to Purchase and Sell</u>.  On the terms and subject to the conditions contained in this Agreement, Purchaser agrees to purchase from Seller, and Seller agrees to sell to Purchaser, all of Seller's right, title and interest in and to the Purchased Assets (as hereinafter defined). The Purchased Assets shall be sold to Purchaser free and clear of any and all debts, liens, taxes, claims (as claim is defined in Section 101(5) of the Bankruptcy Code) and other Encumbrances and liabilities of Seller or its bankruptcy estate of whatever kind or nature, including but not limited to any and all security interests, landlord's liens, warehouseman's liens, mortgages, pledges, charges, suits, licenses, options, rights of recovery, judgments, rights of first refusal, orders and decrees of any court or foreign or domestic governmental entity, interest, covenants, restrictions, indentures, instruments, leases, options, contracts, agreements, claims for reimbursement, contribution, indemnity or exoneration, successor, products liability, environmental, taxes, labor, alter ego and other liabilities (collectively, "Claims"), it being understood and agreed that Purchaser does not and shall not assume or become liable for any of the debts, liabilities or Claims of Seller in connection with the prior operation of Seller's business, including any claims for negligence, products, liability, breach of contract or labor related obligations arising out of collective bargaining agreements or otherwise.

Section 2.2.   <u>Enumeration of Purchased Assets</u>. The following assets of the Seller used in connection with the Business shall constitute the "Purchased Assets":

(a)      all existing operating equipment, manufacturing equipment, office equipment, furniture, computers, computer files and books at the Premises, together with related spare parts and accessories, all as set forth on <u>Schedule 2.2(a)</u> attached hereto and made a part hereof (collectively, the "<u>Equipment</u>").

(b)      all of Seller's trademarks (including, without limitation, the federal trademarks "ArtSelect" (Serial Number 78487711 – Registration Number 3084598), "ArtSelect" (Serial Number 75452318 – Registration Number 2327273), "Poster Z" (Serial Number 77235000) and "Art Gazebo" (Serial Number 78491642 – Registration Number 3015652), copyrights, trade names (including, without limitation, the trade name "ArtSelect"), service marks, and service names, internet domain names, including "artselect.com," and the other internet domain names listed on Schedule 2.2(b), trade secrets (all both registered and common law), and all rights associated therewith and appurtenant thereto, and all assorted goodwill, all as set forth on <u>Schedule 2.2(b)</u> attached hereto and made a part hereof (collectively "<u>Intellectual Property</u>");

(c)      all remaining inventory of Seller (collectively, the "<u>Inventory</u>").

(d)      All customer lists, customer relationships, customer files, customer product specifications, historical sales and price information, vendor and supplier lists, historical vendor and supplier purchase and price information, marketing plans, market studies, customer proposals and all other files and records and business records relating to the production,

marketing and sale of Seller's products (collectively, "Business Records"). Purchaser agrees to retain all such records for three years and to give the Seller and any bankruptcy trustee subsequently appointed for Seller reasonable access and the right to copy(at the expense of Seller or such trustee, as applicable) all such records for their business purposes.

Section 2.3.    Websites. All source code, object code, tools, graphics, applications, demonstration version, microsites, prototypes, specifications, requirements, templates, equipment, documentation, databases, and database information, training materials and other technology, information and materials relating to or necessary or useful in connection with the www.artselect.com website, the www.postersetc.com website, and any other website hosted, operated or maintained by Seller (including any website used in connection with performing Seller's obligations under the contracts listed on Schedule 2.4 of that certain Asset Purchase Agreement by and between Seller and Metaverse Corporation, dated as of December 3, 2008, or in existence immediately prior to the Closing) (the "Website Assets"), plus all right, title and interest in (i) all precursors, portions and work in progress with respect thereto and all inventions, works of authorship, technology, information, know-how, materials and tools relating to the Website Assets or the development, production, use, support or maintenance thereof and (ii) all copyrights, patent rights, trade secret rights, trademark rights, mask works rights, *sui generis* database rights and other intellectual property rights and all business, contract rights and goodwill in, incorporated or embodied in, used to develop or produce or use, or related to the Website Assets.

Section 2.4.    Omitted.

Section 2.5.    Excluded Assets. The Purchased Assets shall only include the assets set forth in Section 2.2 and Section 2.3, and shall not include any other asset of Seller or its bankruptcy estate, or the assets of Parent and its bankruptcy estate, including, without limitation, the following "Excluded Assets":

(a)    all cash and cash equivalents (including the Purchase Price) or similar investments, bank accounts, commercial paper, certificates of deposit, Treasury bills and other marketable securities;

(b)    all accounts receivable and other receivables, whether or not billed;

(c)    all of Seller's credits, prepaid expenses, deferred charges, advance payments, security deposits (other than security deposit under the Lease), returns to and rebates from vendors, and prepaid items arising prior to the Closing;

(d)    all other tangible property (other than Inventory, Equipment, Intellectual Property, Website Assets and Business Records) and all warranties and guarantees, if any, express or implied, in connection therewith to the extent transferable

(e)    the rights of Seller under this Agreement and all cash and non-cash consideration payable or deliverable to Seller under this Agreement;

(f)    all rights which accrue or will accrue to the benefit of the Seller under this Agreement or any document executed and delivered in connection herewith;

(g)     all rights to refunds or recoupment of taxes of the Seller for periods ending on or before the Closing Date;

(h)     all of Seller's corporate and tax books and records, including, without limitation, the corporate charter, seals, minute books, stock transfer books and other documents relating exclusively to the organization and existence of the Seller as a limited liability company and accounts receivable records (excluding Business Records, provided Seller and its bankruptcy trustee shall have the right to copy (at the expense of Seller or such trustee, as applicable) any Business Records for Trustee's business purposes);

(i)     all causes of action belonging to Seller or its bankruptcy estate, including, but not limited to, any causes of action (i) against any Affiliates of Seller, and/or (ii) arising under Chapter 5 of the Bankruptcy Code;

(j)     all materials subject to any attorney-client or other privilege as well as any information concerning employees, the disclosure of which would violate an employee's reasonable expectation of privacy; and

(k)     all insurance policies and all rights thereunder.

Section 2.6.    Omitted.

## ARTICLE 3

### Liabilities

Section 3.1.    Excluded Liabilities. Purchaser shall not assume and shall not be deemed to have assumed or otherwise be liable for any debts, Claims, obligations or other liability of Seller or its bankruptcy estate whatsoever, all of which shall remain the sole responsibility and obligation of Seller.

## ARTICLE 4

### Purchase Price; Manner of Payment and Closing

Section 4.1.    Consideration. The purchase price (the "Purchase Price") for the Purchased Assets shall be One Million Six Hundred Thirty-Five Thousand Eight Hundred and Eighty-Four Dollars ($1,635,884.00), of which $10,884 shall be deemed compensation for the agreement contained in Section 8.6 below. The Purchaser agrees to pay the Purchase Price in the manner described in Section 4.2 below. The Purchase Price shall be allocated among the Purchased Assets in the manner described in Section 4.4.

Section 4.2.    Time and Place of the Closing. The closing of the transactions contemplated by this Agreement shall take place at 10:00 a.m., Eastern Standard Time, at the offices Foley & Lardner LLP, Jacksonville Florida (the "Foley Firm"), (a) within three (3) Business Days after all of the conditions set forth in Article 7 have been satisfied or waived (or such longer period after such conditions have been satisfied as may be required by the Sale Order under the provisions of the Federal Rules of Bankruptcy Procedure 6004(g) or 6006(d)), or (b)

on such other date as the Parties mutually agree upon so long as Purchaser is deemed a good faith purchaser under 11 U.S.C. § 363(m), but no later than sixty (60) days from the Filing Date, time being of the essence (the "Closing"). The date on which the Closing occurs in accordance with the foregoing and effective upon receipt of the Purchase Price is referred to in this Agreement as the "Closing Date."

Section 4.3.    Manner of Payment of the Consideration. Contemporaneous with the execution of this Agreement, Purchaser shall deliver to Foley Firm, acting as escrow agent, a cashier's check for $50,000 (the "Deposit"), to be held by the Foley Firm in escrow in a non-interest bearing trust account subject to the terms hereof. At the Closing, Purchaser shall authorize the release of the Deposit to Seller and pay the balance of the Purchase Price to the Seller by wire transfer of immediately available funds to an account designated by Seller, which Seller shall designate by written notice delivered to Purchaser not later than two (2) Business Days prior to the Closing Date. If Purchaser is not selected as the successful bidder at the auction to be conducted in the Bankruptcy Case, the Deposit shall be returned to Purchaser.

Section 4.4.    Closing Deliveries. At the Closing:

(a)    Seller shall execute and deliver to Purchaser a Bill of Sale, and an Assignment of Intellectual Property, substantially in the forms attached as Exhibits C-1 and C-2 and such other bills of sale, endorsements, assignments and such other instruments of transfer and conveyance, in form and substance reasonably satisfactory to Purchaser's counsel, as shall be effective, together with the Sale Order, to vest in Purchaser as of the Closing Date good title, free and clear, in accordance with the terms of the Sale Order, of any Claims to all of the Purchased Assets as provided herein and in the Sale Order;

(b)    Purchaser shall deliver to Seller, a certificate, dated the Closing Date and signed by Purchaser's President, Chief Executive Officer or Chief Operating Officer, certifying that the representations and warranties of Purchaser contained in Section 5.1 are accurate and complete both when made and at and as of the Closing Date with the same effect as though made at and as of such time and that all covenants required by the terms hereof to be performed by Purchaser on or before the Closing Date, to the extent not waived by Seller in writing, have been so performed in all material respects (or, if any such covenant has not been so performed, indicating that such covenant has not been performed); and

(c)    Purchaser shall deliver to Seller, a certificate, dated the Closing Date and signed by Purchaser's President, Chief Executive Officer or Chief Operating Officer attaching a certified copy of the certificate of incorporation and by-laws of Purchaser and all amendments thereto.

Section 4.5.    Allocation of Consideration. The Purchase Price shall be allocated among the Purchased Assets in the manner required by Section 1060 of the Internal Revenue Code of 1986, as amended (the "Price Allocation"). The Purchase Price shall be allocated among the Purchased Assets in accordance with Schedule 4.5. Each Party agrees to timely file an IRS Form 8594 reflecting the Price Allocation for the taxable year that includes the Closing Date and to make any timely filing required by applicable state or local laws. Each Party hereto shall adopt and utilize the Price Allocation for purposes of all tax returns filed by them and shall not

voluntarily take any position inconsistent with the foregoing in connection with any examination of any tax return, any refund claim, any litigation proceeding or otherwise. In the event that the Price Allocation is disputed by any taxing authority, the Party receiving notice of the dispute shall promptly notify the other Party of such dispute and the Parties shall cooperate in good faith in responding to such dispute in order to preserve the effectiveness of the Price Allocation.

Section 4.6.    Prorations. All obligations due with respect to the Purchased Assets for periods prior to the Closing Date shall be paid in full or otherwise satisfied by Seller, and all obligations due with respect to the Purchased Assets for periods from and after the Closing Date shall be paid in full or otherwise satisfied by Purchaser. The covenant under this Section 4.6 shall survive the termination of this Agreement.

## ARTICLE 5

### Representations and Warranties

Section 5.1.    Purchaser's Representations and Warranties. Purchaser represents and warrants to Seller that:

(a)     Purchaser is a corporation validly existing and in good standing under the laws of the jurisdiction of its organization. Purchaser is duly qualified and in good standing in each jurisdiction in which the nature of its business requires it to be so qualified.

(b)     Purchaser has full power and authority to enter into and perform this Agreement and all documents and instruments to be executed by Purchaser pursuant to this Agreement. The execution and delivery of this Agreement by Purchaser, and the performance by Purchaser of all of its obligations hereunder, have been duly authorized and approved prior to the date hereof by all necessary entity action. This Agreement has been duly executed and delivered by Purchaser and constitutes its legal, valid and binding agreement, enforceable against it in accordance with its terms, except (i) as limited by applicable bankruptcy, insolvency, reorganization, moratorium and other laws of general application affecting enforcement of creditors' rights generally and (ii) as limited by laws relating to the availability of specific performance, injunctive relief or other equitable remedies.

(c)     Except for the Court's entry of the Sale Order, no consent, authorization, order or approval of, or filing or registration with, any governmental authority or other Person is required for the execution and delivery by Purchaser of this Agreement and the consummation by Purchaser of the transactions contemplated by this Agreement.

(d)     Neither the execution and delivery of this Agreement by Purchaser, nor the consummation by Purchaser of the transactions contemplated hereby, will conflict with or result in a breach of any of the terms, conditions or provisions of the certificate of formation or operating agreement of Purchaser, or of any agreement or instrument to which Purchaser is a party or any of its properties is subject or bound or any statute or administrative regulation, or of any order, writ, injunction, judgment or decree of any court or governmental authority or of any arbitration award that is binding upon Purchaser, which breach or conflict would materially affect Purchaser's ability to perform its obligations hereunder.

(e)     Purchaser has not dealt with any person or entity who is or may be entitled to a broker's commission, finder's fee, investment banker's fee or similar payment from Seller for arranging the transactions contemplated hereby or introducing the Parties to each other.

(f)     Purchaser has and, at Closing, shall have sufficient cash on hand to pay the Purchase Price and to make all other necessary payments of fees and expenses in connection with the transactions contemplated by this Agreement, if any.

(g)     PURCHASER HEREBY ACKNOWLEDGES AND AGREES THAT, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN SECTION 5.2 BELOW AND OTHERWISE EXPRESSLY STATED IN THIS AGREEMENT OR THE ANCILLARY DOCUMENTS, SELLER MAKES NO REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO ANY MATTER RELATING TO THE PURCHASED ASSETS INCLUDING, WITHOUT LIMITATION, INCOME TO BE DERIVED OR EXPENSES TO BE INCURRED IN CONNECTION WITH THE PURCHASED ASSETS, THE VALUE OF THE PURCHASED ASSETS (OR ANY PORTION THEREOF), THE TRANSFERABILITY OF THE PURCHASED ASSETS, TITLE TO THE PURCHASED ASSETS (OR ANY PORTION THEREOF), OR ANY OTHER MATTER OR THING RELATING TO THE PURCHASED ASSETS OR ANY PORTION THEREOF. WITHOUT IN ANY WAY LIMITING THE FOREGOING, SELLER HEREBY DISCLAIMS ANY WARRANTY, EXPRESS OR IMPLIED, OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AS TO ANY PORTION OF THE PURCHASED ASSETS. PURCHASER FURTHER ACKNOWLEDGES THAT PURCHASER HAS CONDUCTED AN INDEPENDENT INSPECTION AND INVESTIGATION OF THE PHYSICAL CONDITION OF THE PURCHASED ASSETS AND ALL SUCH OTHER MATTERS RELATING TO OR AFFECTING THE PURCHASED ASSETS AS PURCHASER DEEMED NECESSARY OR APPROPRIATE AND THAT IN PROCEEDING WITH ITS ACQUISITION OF THE PURCHASED ASSETS, EXCEPT FOR ANY REPRESENTATIONS AND WARRANTIES EXPRESSLY SET FORTH IN SECTION 5.2, PURCHASER IS DOING SO BASED SOLELY UPON SUCH INDEPENDENT INSPECTIONS AND INVESTIGATIONS. ACCORDINGLY, PURCHASER WILL ACCEPT THE PURCHASED ASSETS AT THE CLOSING "AS IS," "WHERE IS," AND "WITH ALL FAULTS" INCLUDING THE INVENTORY WHICH IS PURCHASED STRICTLY WITHOUT ANY POSSIBLE REPRESENTATIONS OR WARRANTIES.

Section 5.2.    Seller's Representations and Warranties. Seller represents and warrants to Purchaser that:

(a)     Organization, Standing and Power. Seller is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware. Seller has the requisite power and authority to own, lease and operate their properties, including the Purchased Assets, and to conduct the Business as currently conducted.

(b)     Authority. Seller has all corporate power and authority necessary to execute this Agreement and Ancillary Documents to which it is or will be a party (the "Seller Ancillary Agreements") and to consummate the transactions contemplated hereby and thereby. The execution and delivery of this Agreement and the consummation of the transactions

contemplated hereby by Seller has been duly authorized by all necessary corporate action, and the execution and performance of the Seller Ancillary Documents by Seller will be authorized by all necessary corporate action prior to the Closing. This Agreement constitutes, and upon execution of each of the Seller Ancillary Agreements such agreements will constitute, valid and binding obligations of Seller, enforceable against Seller in accordance with their respective terms. Notwithstanding anything to the contrary contained herein, no provision of this Agreement is binding upon Seller or Purchaser unless and until the entry of the Sale Order.

(c)     No Breach or Conflict.  Except in connection with the Bankruptcy Case and subject to the Sale Order, neither the execution, delivery or performance of this Agreement and the Seller Ancillary Documents, nor the consummation of the transactions contemplated hereby and thereby, will (a) cause Seller to breach any material Law or Order that is applicable to the Business, except for such breaches that would not be likely to have a material adverse effect, or (b) conflict with or result in a violation of any Seller's organizational documents.

(d)     Assets.  On the Closing Date, Purchaser will acquire title to, or a valid leasehold interest in, as applicable, all of Seller's right, title and interest in the Purchased Assets, free and clear of any and all Encumbrances other than Encumbrances disclosed on Schedule 5.2(d).

(e)     Omitted.

(f)     Claims, Litigation and Disputes.  To Seller's knowledge, except (i) as set forth on Schedule 5.2(f) and (ii) for the Bankruptcy Case, there is no pending proceeding before a Governmental Entity adversely affecting (A) Seller's ability to perform its obligations hereunder or (B) the ownership, use, maintenance or operation of the Purchased Assets by Seller, that in any such case if determined adversely to Seller, would reasonably be expected to have a material adverse effect.

(g)     Omitted.

(h)     Compliance With Laws.  The Seller is in compliance with all material Laws applicable to the Business, except in any  such case where the failure to be in compliance would not have a material adverse effect.  To Seller's knowledge, Seller has not received any written notice within the past 12 months relating to violations or alleged violations or defaults under any applicable Law or Order, where the failure to cure would result in a material adverse effect.

(i)     Brokers.  Seller has not dealt with any Person who is or may be entitled to a broker's commission, finder's fee, investment banker's fee or similar payment from Purchaser for arranging the transaction contemplated hereby or introducing the Parties to each other.

## ARTICLE 6

### Conduct Prior to the Closing

Section 6.1.    Access and Information. Subject to the right of Seller to limit access to certain proprietary or confidential information prior to entry of the Sale Order and satisfaction of

all conditions to Closing, upon prior written notice to Seller, Seller shall afford to Purchaser and to Purchaser's financial advisors, legal counsel, accountants, consultants, financing sources, and other authorized representatives, access during normal business hours throughout the period prior to the Closing Date, upon reasonable written notice, to its books, records, properties, plants and personnel relating to the Purchased Assets and, during such period, shall furnish as promptly as practicable to Purchaser, at Purchaser's expense, copies of such books and records as Purchaser shall reasonably request.

Section 6.2.    Conduct of the Business Pending the Closing.  Subject to any obligations as debtors in possession under the Bankruptcy Code and except as otherwise expressly contemplated by this Agreement or the Orders of the Bankruptcy Court or except as described on Schedule 6.2 hereto, from the date hereof until the Closing Date, Seller shall use commercially reasonable efforts to conduct the Business substantially in the manner as conducted on the date of this Agreement.  Without limiting the generality of the foregoing, subject to any obligations as debtors in possession under the Bankruptcy Code and except as otherwise expressly contemplated by this Agreement or the Orders of the Bankruptcy Court or with the prior written consent of Purchaser (which consent shall not be unreasonably withheld or delayed) or except as described in Section 6.6 hereto, from the date hereof until the Closing Date, Seller shall:

(a)    Use, preserve and maintain the Purchased Assets in the ordinary course of business and not cause material damage to or destruction or loss of any of such Purchased Assets;

(b)    Continue to maintain the insurance covering the Purchased Assets in effect as of the date of this Agreement;

(c)    Not commit any act or omit to do any act, nor permit any act or omission to act, which causes a material breach of any Assumed Contract except for any act or omission in connection with or as a result of the Bankruptcy Case or the holdback of payments to vendors on or after November 1, 2008;

(d)    Except in the ordinary course of business and except for sales of Equipment, not enter into any agreement or agreements for the sale of a material amount of any of the Purchased Assets unless any such item of Equipment is no longer necessary for the operation of the Business; and

(e)    Not, without prior consent of Purchaser, grant any raises or bonuses to employees, except (i) in the ordinary course of business, (ii) the raises or bonuses set forth on Schedule 6.2(e), or (iii) raises, bonuses, or other fringe benefits provided in any key employee retention plan or other employee incentive or severance plan that has been or may be approved by the Bankruptcy Court prior to the Closing.

Section 6.3.    Bankruptcy Action.

(a)    This Agreement shall be subject to the consideration of higher or better offers submitted at an auction ( the "Auction").

Section 6.4.    Omitted.

Section 6.5.    Omitted.

Section 6.6.    Schedules. The Schedules hereto may be updated by Seller up to the Closing Date, and shall be updated by Seller on the Closing Date; provided that such revised Schedules do not materially affect the terms of this Agreement or the consummation of the transactions contemplated hereby.

Section 6.7.    Commercially Reasonable Efforts; Transfer of Assets.  Seller will use commercially reasonably efforts to obtain the Sale Order required for the consummation of the transactions contemplated by this Agreement subject to Seller's right to accept higher or better offers at the Auction.

## ARTICLE 7

### Conditions to Closing

Section 7.1.    Conditions to Seller's Obligations. The obligation of Seller to consummate the transactions contemplated hereby is subject to the satisfaction at or prior to the Closing Date of the following conditions:

(a)    The representations and warranties made by Purchaser in Section 5.1 shall have been true and correct in all material respects when made and shall be true and correct in all material respects as if originally made on and as of the Closing Date;

(b)    All obligations of Purchaser to be performed hereunder on or prior to the Closing Date shall have been duly performed in all material respects;

(c)    No action or proceeding before any court, government body or other tribunal shall have been commenced or threatened (by a party other than Seller) wherein an unfavorable judgment, decree or order would (i) prevent the carrying out of this Agreement or any of the transactions contemplated hereby, (ii) declare unlawful any of the transactions contemplated by this Agreement or (iii) cause any of such transactions to be rescinded as reasonably determined by Purchaser and Purchaser's counsel;

(d)    The Sale Order shall have been entered by the Bankruptcy Court and the effectiveness of the Sale Order shall not have been modified, reversed, vacated, stayed, restrained or enjoined on the Closing Date;

(e)    To the extent not addressed or covered by the Sale Order, Seller shall have received the consent of all third parties holding Encumbrances, Claims or interests against the Purchased Assets to the release of all such Encumbrances, Claims and interests in the Purchased Assets as required under 11 U.S.C. § 363(b) and (f);

(f)    Seller's receipt of Purchaser's closing deliveries pursuant to Section 4.3;

(g)    Seller's receipt of the Deposit and the balance of the Purchase Price pursuant to Section 4.2. Each of the foregoing conditions is for the benefit of Seller, which may waive any of such conditions at, or prior to, the Closing.

Section 7.2.  Conditions to Purchaser's Obligations. The obligation of Purchaser to consummate the transaction contemplated hereby is subject to the satisfaction at or prior to the Closing Date of the following conditions:

(a)  The representations and warranties made by Seller in Section 5.2 shall have been true and correct in all material respects when made, and shall be true and correct in all material respects as if originally made on and as of the Closing Date;

(b)  All obligations of Seller to be performed hereunder on or prior to the Closing Date shall have been duly performed in all material respects;

(c)  No action or proceeding before any court, government body or other tribunal shall have been commenced or threatened which seeks to (i) nullify, restrict or modify the rights and protections afforded Purchaser in this Agreement and the Sale Order, (ii) prevent the carrying out of this Agreement or any of the transactions contemplated hereby, (iii) declare unlawful the transactions contemplated by this Agreement, (iv) cause such transactions to be rescinded or (v) materially affect the right of Purchaser to own, operate or control the Purchased Assets following the Closing as reasonably determined by Purchaser and Purchaser's counsel;

(d)  The Sale Order shall have been entered by the Bankruptcy Court and the effectiveness of the Sale Order shall not have been modified, reversed, vacated, stayed, restrained or enjoined on the Closing Date;

(e)  To the extent not addressed or covered by the Sale Order, Seller shall have received the consent of all third parties holding Encumbrances, Claims or interests against the Purchased Assets to the release of all such Encumbrances, Claims and interests in the Purchased Assets as required under 11 U.S.C. § 363 (b) and (f);

(f)  Purchaser's receipt of Seller's closing deliveries pursuant to Section 4.3. Each of the foregoing conditions is for the benefit of Purchaser, which may waive any of such conditions at, or prior to, the Closing.

(g)  Seller shall have delivered to Purchaser such bills of sale, endorsements, assignments, and other good and sufficient instruments of conveyance and transfer, in form and substance reasonably satisfactory to Purchaser and its counsel, as are effective to vest in Purchaser good and marketable title to all of Seller's interest in the Purchased Assets free and clear of any encumbrances or Claims.

## ARTICLE 8

### Other Agreements

Section 8.1.  Further Assurances. The Parties shall execute such further documents, and perform such further acts, as may be reasonably necessary to transfer and convey the Purchased Assets to Purchaser, on the terms herein contained, and to otherwise comply with the terms of this Agreement and. consummate the transaction contemplated hereby.

**Section 8.2.** <u>Post-Closing Access</u>. Purchaser agrees to store the Business Records and computers, computerbooks, records and files, for 3 years following Closing and to permit Seller to have access to the Business Records for 3 years following the Closing Date, without cost or expense.

**Section 8.3.** <u>Efforts and Actions to Cause Closings to Occur</u>. Upon the terms and subject to the conditions of this Agreement, each of Seller and Purchaser shall use their respective commercially reasonable efforts to take, or cause to be taken, all actions, and to do, or cause to be done and cooperate with each other in order to do, all things necessary, proper or advisable (subject to any applicable laws) to consummate the Closing as promptly as practicable, including, but not limited to, the preparation and filing of all motions, forms, registrations and notices required to be filed to consummate the Closing and the taking of such actions as are reasonably necessary to obtain any requisite approvals, authorizations, consents, orders, licenses, permits, exemptions or waivers by any third party or governmental entity. In addition, no Party shall take any action after the date hereof that could reasonably be expected to materially delay the obtaining of, or result in not obtaining, any permission, approval or consent from any governmental entity or other Person required to be obtained prior to Closing.

**Section 8.4.** <u>Collection of Accounts Receivable Following the Closing</u>. Purchaser shall promptly remit to Seller any payments received by Purchaser following the Closing Date with respect to Seller's accounts receivable.

**Section 8.5.** <u>Survival</u>. Except as specifically provided to the contrary in this Agreement, the representations, warranties, covenants and agreements of the Parties contained in this Agreement or any agreement delivered in connection herewith shall not survive the Closing Date.

**Section 8.6.** <u>Post-Closing Access to Purchased Assets</u>. Seller shall maintain and not reject the Lease Agreement by and between Seller and Nathan Zenack, Mary K. Miller, Johnson Children Irrevocable Trust, Clair M. and Mary K. Johnson Revocable Trust, Robert C. and Dorothy A. Johnson as lessors dated November 16, 2007 for the premises located at 2094 185th Street, Suite H-2, Fairfield, Iowa 52556 (the "<u>185th Premises</u>") and the Lease Agreements by and between Seller and Jack H. Kulp and Suzanne Kulp, Trustees of the Kulp Family Trust dated July 10, 2007 for the premises located at 502-508 South 23rd Street, Fairfield, Iowa 52556 (the "<u>South 23rd Premises</u>") for a period of not less than thirty (30) days following the Closing, and shall ensure that during such period Purchaser shall have full access to the 185th Premises and the South 23rd Premises for purposes of taking possession of and removing any and all Purchased Assets.

## ARTICLE 9

### Termination

**Section 9.1.** <u>Termination by Mutual Consent</u>. This Agreement may be terminated at any time prior to the Closing Date by mutual written agreement of Seller and Purchaser.

Section 9.2.   Termination by Seller. Seller may terminate this Agreement at any time prior to the Closing Date if:

(a)     there has been a material breach by Purchaser of any of its representations or warranties contained in this Agreement which breach is not cured within ten (10) Business Days after written notice thereof;

(b)     there has been a material breach of any of the covenants or agreements set forth in this Agreement on the part of Purchaser, which breach is not curable or, if curable, is not cured within ten (10) days after written notice of such breach is given by Seller to Purchaser;

(c)     the conditions to the obligations of Seller set forth in Section 7.1 shall not have been waived or satisfied on or before the Termination Date or such earlier date as may be specified therefor, including, without limitation, as a result of an overbid by a third party that results in an Sale Order for the transactions contemplated hereby not being entered by the Bankruptcy Court;

(d)     there shall be in effect a final non-appealable court order restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated hereby; or

(e)     the Closing Date shall not have occurred on or prior to sixty (60) days from the Filing Date (the "Termination Date"); provided, however, that the right to terminate shall not be available under this Section 9.2(e) if the Closing shall not have occurred by such date as a result of the failure of Seller to fulfill any of its obligations under this Agreement.

Section 9.3.   Termination by Purchaser. Purchaser may terminate this Agreement at any time prior to the Closing Date if:

(a)     there has been a material breach by Seller of any of its representations or warranties contained in this Agreement which breach is not cured within ten (10) Business Days after written notice thereof;

(b)     there has been a material breach of any of the covenants or agreements set forth in this Agreement on the part of Seller, which breach is not curable or, if curable, is not cured within. ten (10) days after written notice of such breach is given by Purchaser to Seller;

(c)     the conditions to the obligations of Purchaser set forth in Section 7.2 shall not have been waived or satisfied on or before the Termination Date or such earlier date as may be specified therefore;

(d)     there shall be in effect a final non-appealable court order restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated hereby;

(e)     the entry of an order by the Bankruptcy Court authorizing the sale of the Purchased Assets of Seller to any entity other than Buyer; or

(f)     the Closing Date shall not have occurred on or prior to the Termination Date; provided, however, that the right to terminate shall not be available under this Section

9.3(f) if the Closing shall not have occurred by such date as a result of the failure of Purchaser to fulfill any of its obligations under this Agreement.

Section 9.4. <u>Effect of Termination and Abandonment</u>. In the event of termination of the Agreement pursuant to this Article 9, written notice thereof shall as promptly as practicable be given to the other Party to this Agreement and this Agreement shall terminate and the transactions contemplated hereby shall be abandoned, without further action by either of the Parties, and the Deposit shall, in the event of a termination under Section 9.2(d) or 9.3, be returned to Purchaser without the requirement of Purchaser's delivery of a written instruction or authorization to the Foley Firm concerning the same which instruction and authorization is hereby granted. If this Agreement is terminated as provided herein upon delivery of the Deposit in accordance with this Section 9.4, all obligations of the Parties shall terminate.

## ARTICLE 10

### Miscellaneous

Section 10.1. <u>Publicity</u>. Except as otherwise required by law or in connection with Seller's bankruptcy filings with the Bankruptcy Court and the publication of requisite notices of sale in national and regional publications in connection with the sale of the Purchased Assets in the bankruptcy proceedings, press releases concerning this transaction shall be made only with the prior approval of Seller and Purchaser, which approval shall not be unreasonably withheld. Notwithstanding the forgoing, the Parties acknowledge that Seller will advertise the proposed sale as part of the Bankruptcy auction process.

Section 10.2. <u>Notices</u>. All notices required or permitted to be given hereunder shall be in writing and may be delivered by hand, by facsimile or by nationally recognized private courier. Notices delivered by hand, by facsimile or by nationally recognized private carrier shall be deemed given on the first business day following receipt; provided, however, that a notice delivered by facsimile shall only be effective if such notice is also delivered by hand, or deposited in the United States mail, postage prepaid, registered or certified mail on or before two (2) Business Days after its delivery by facsimile. All notices shall be addressed as follows:

| | |
|---|---|
| if to Purchaser: | Art.com, Inc.<br>2100 Powell Street, 10th Floor<br>Emeryville, CA 94608<br>Attention: Chief Financial Officer<br>Fax: (510) 588-3930 |
| with a copy to: | Art.com, Inc. 2100Powell Street, 10th Floor<br>Emeryville, CA 94608<br>Fax: (510) 588-3921<br>Attention:     Kevin A. Lucas, Esq. |
| if to Seller to: | ArtSelect, Inc. |

7660 Centurion Parkway
Jacksonville, FL 32256
Fax: (904) 641-4480
Attention:     John Z. Ferguson

with a copy to Seller's counsel:

Foley & Lardner LLP
One Independent Drive, Suite 1300
Jacksonville, FL 32202
Fax: (904) 359-8700
Attention:     Michael Kirwan, Esq.
Gardner F. Davis, Esq.

or, in each case, at such other address as may be specified in writing to the other party.

Section 10.3. <u>Expenses</u>. Other than as set forth in this Agreement, each of Seller and Purchaser will bear their respective costs and expenses (including legal fees and expenses) incurred in connection with this Agreement and the transactions contemplated hereby.

Section 10.4. <u>Entire Agreement</u>. This Agreement and the instruments to be delivered by the Parties pursuant to the provisions hereof constitute the entire agreement between the Parties. Each Exhibit and Schedule attached hereto shall be considered incorporated into this Agreement.

Section 10.5. <u>Applicable Law</u>. This Agreement shall be governed and controlled as to validity, enforcement, interpretation, construction, effect and in all other respects by the internal laws of the State of Florida applicable to contracts made therein, without regard to rules of conflicts of law.

Section 10.6. <u>Binding Effect; No Third Party Beneficiaries</u>. This Agreement shall inure to the benefit of and be binding upon the Parties hereto, and their successors and permitted assigns. The parties specifically acknowledge and agree that the Seller as debtor-in-possession under the Bankruptcy Code and any trustee appointed for Seller under the Bankruptcy Code shall be specifically entitled to the benefit of this Agreement. Nothing in this Agreement, express or implied, is intended to confer on any person other than the Parties hereto, and their respective successors and permitted assigns, any rights, remedies, obligations or liabilities under or by reason of this Agreement.

Section 10.7. <u>Assignability</u>. This Agreement shall not be assignable by either Party without the prior written consent of the other Party, except that at or prior to the Closing, Purchaser may assign its rights and delegate its duties under this Agreement to one or more Affiliates; provided that such assignment shall not discharge the obligations and liabilities of Purchaser hereunder.

Section 10.8. <u>Amendments</u>. This Agreement shall not be modified or amended except pursuant to an instrument in writing executed and delivered on behalf of each of the Parties hereto.

Section 10.9. <u>Headings</u>. The headings contained in this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement.

Section 10.10. <u>Counterparts</u>. This Agreement maybe executed in counterparts, each of which shall constitute an original and both of which taken together shall constitute one and the same Agreement. Delivery of an electronic counterpart shall be effective as delivery of a manually executed counterpart.

Section 10.11. <u>Exclusive Jurisdiction</u>. Purchaser and Seller agree that upon Seller's filing bankruptcy, all disputes arising hereunder shall, prior to the issuance of a final decree from the Bankruptcy Court closing the Bankruptcy Case, be resolved by the Bankruptcy Court which shall have exclusive jurisdiction over all disputes and other matters relating to the interpretation and enforcement of this Agreement or any ancillary document executed pursuant hereto, and Purchaser expressly consents to and agrees not to contest such exclusive jurisdiction. If the Bankruptcy Court does not have or abstains from exercising such jurisdiction, Purchaser expressly consents to and agrees not to contest the non exclusive jurisdiction of the courts of the State of Florida and, to the extent permitted by applicable law, of any Federal Court, in each case located in Jacksonville, Florida.

Section 10.12. <u>Tax Matters</u>. In the event that Section 1146(c) of the Bankruptcy Code does not apply to the transactions contemplated hereby, Purchaser shall be responsible for the timely payment of all sales, use, transfer (including, without limitation, documentary transfer stamp and like taxes) and similar taxes payable in connection with the consummation of the transactions contemplated by this Agreement and the sale and transfer of the Purchased Assets to Purchaser or its designee.

IN WITNESS WHEREOF, the Parties have executed this Asset Purchase Agreement as of the date first above written.

**ARTSELECT, INC.**

By: _____
Name: John E. Ferguson
Title CEO

**ART.COM, INC.**

By: _____
Name: Chuck Kurth
Title: Chief Financial Officer

# TABLE OF EXHIBITS AND SCHEDULES

EXHIBIT A – [Omitted]

EXHIBIT B – [Omitted]

EXHIBIT C-1 – Bill of Sale

EXHIBIT C-2 - Assignment of Intellectual Property

SCHEDULE 2.2(a) – List of existing operating equipment, manufacturing equipment, office equipment, furniture, computers, computer files and books

SCHEDULE 2.2(b) – List of trademarks, trade names, service marks

SCHEDULE 2.4 – [Omitted]

SCHEDULE 4.5 – Price Allocation

SCHEDULE 5.2(d) – Encumbrances on Purchased Assets

SCHEDULE 5.2(f)- Claims, Litigation and Disputes

SCHEDULE 6.2 – Conduct of Business Pending the Closing

SCHEDULE 6.2(e) – Raises or Bonuses to Employees

EXHIBIT C-1

## BILL OF SALE, ASSIGNMENT AND ASSUMPTION

THIS BILL OF SALE, ASSIGNMENT AND ASSUMPTION (this "Assignment") is made on _____, 2009, by ARTSELECT, INC., a Delaware corporation (the "Seller").

1. **Transfer of Ownership.** Pursuant to that certain Asset Purchase Agreement dated _____, 2009, between Seller and Purchaser (the "Asset Purchase Agreement"), Seller has agreed to convey to Purchaser substantially all of the assets used in Seller's business (collectively, the "Assets"). The Seller has been paid $_____ and other good and valuable consideration for making this transfer. All capitalized terms that are not defined in this Bill of Sale shall have the meanings set forth in the Asset Purchase Agreement.

2. **Promises by Seller.** Seller represents and warrants that: (a) Seller is the lawful owner of the Assets; (b) the Assets are free and clear of all liens and encumbrances; (c) Seller has the right to sell and assign the Assets; (d) Seller will warrant and defend the title thereto against the lawful claims of all persons whomsoever; and (e) Seller has not previously sold or assigned any of the Assets.

3. **Acceptance and Assumption.** Buyer hereby accepts the foregoing assignment and acknowledges and confirms that Buyer hereby assumes all duties and obligations of Seller relating to the assignment and/or ownership of the Assets.

4. **Miscellaneous.**

    (a) This Assignment shall be binding upon, and inure to the benefit of, the parties to this Assignment and their respective heirs, legal representatives, successors and assigns.

    (b) This Assignment shall be construed in accordance with the laws of the State of Florida, without regard to the principles of conflicts of law.

    (c) This Assignment may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

**[Remainder of page intentionally left blank.]**

Exhibit C-1 – Page 1

IN WITNESS WHEREOF, the parties have caused this Bill of Sale, Assignment and Assumption to be executed as of the day and year set forth above.

ATTEST:

SELLER:

ARTSELECT, INC.

_____
Secretary

By:_____
      John Z. Ferguson
      Chief Financial Officer

ATTEST:

PURCHASER:

ART.COM, INC.

_____
Secretary

By:_____
      Name:
      Title:

Exhibit C-1 – Page 2

# EXHIBIT C-2

## INTELLECTUAL PROPERTY ASSIGNMENT

This Intellectual Property Assignment ("Assignment") is dated as of _____, 2008, by Art.com, Inc., a Delaware corporation ("Assignee") and ArtSelect, Inc., a Delaware corporation ("Assignor"). All capitalized terms not otherwise defined herein shall have the meanings given them in that certain Asset Purchase Agreement by and between Assignee and Assignor, dated as of January ___, 2009.

WHEREAS, Assignee is party to an Asset Purchase Agreement (the "Purchase Agreement") with Assignor, whereby Assignee has, or will, purchase substantially all of the Assets of the Business, including all copyrights, trademarks and patents of Assignor;

WHEREAS, pursuant to the terms of the Purchase Agreement, Assignor has agreed to assign to Assignee all right, title and interest in and to all of its intellectual property, including rights to the names "ArtSelect", "PostersEtc.", "Art Gazebo" and "PosterZ", and including, and not limited to, all copyrights, trademarks and patents of Assignor, including but not limited to those set forth on Exhibit A (collectively and singularly, the "Intellectual Property");

WHEREAS, the Assignor and Assignee desire that the assignment of said rights in the trademarks and patents be made of record in the United States Patent and Trademark Office (where applicable), that the assignment of said rights be made of record in the applicable state trademark offices (where applicable), all foreign trademark offices and any other appropriate governmental or administrative offices as the case may be, and that the assignment of the copyrights be made of record in the United States Copyright Office, all foreign copyright offices and any other appropriate governmental or administrative office;

NOW, THEREFORE, for good and valuable consideration, the full receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, the parties hereby agree as follows:

1.    Assignment. Assignor hereby irrevocably sells, assigns, transfers, conveys and delivers to Assignee and its successors and assigns all of Assignor's right, title and interest in and to the Intellectual Property, including, without limitation, the following assignments:

(a)    Assignor hereby assigns, transfers and delivers to Assignee, all right, title and interest in and to the trademarks, including all state and common law rights and rights in foreign jurisdictions, together with the goodwill of the business symbolized by the trademarks, and the registrations and applications therefor, including all rights to damages and profits, due or accrued, arising out of past and present infringements of said trademarks, and the right to sue for and recover the same, in each case free and clear of all liens, claims, security interests and other encumbrances.

(b)    Assignor hereby assigns, transfers and delivers to Assignee all right, title, and interest in and to the copyrights including all registrations and applications, as well as all copyrightable work disclosed or described in any such copyright registrations or applications, and any and all copyrights or similar rights, recognized under the laws of the United States of

Exhibit C-2 – Page 1

America or any other jurisdiction in said copyrights, including all rights to damages and profits, due or accrued, arising out of past infringements of said copyrights and the right to sue for and recover the same, in each case free and clear of all liens, claims, security interests and other encumbrances. Assignor hereby waives any claim that Assignor has or may have under any theory of moral or natural rights or any rights of attribution under the copyrights law of any jurisdiction with respect to said copyrights to the extent such waiver is recognizable under the law of the controlling jurisdiction.

(c) Assignor hereby assigns, transfers and delivers to Assignee the full, exclusive, and entire right, title, and interest in and to the patents, including any provisional rights therein, in and to any divisions, continuations, continuations-in-part, reexaminations and reissues thereof, and in and to any and all inventions disclosed or described in said patent application and improvements thereof, preparatory to obtaining Letters Patent of the United States therefor; and Assignor hereby requests the Director of Patents and Trademarks to issue any and all Letters Patent of the Untied States resulting from said application, or from a division, continuation, , continuation-in-part, reexamination or reissue thereof, to Assignee, as the assignee, for its interest and for the sole use and benefit of Assignee and its assigns and legal representatives.

(d) Assignor hereby assigns, transfers and delivers unto Assignee the full, exclusive, and entire right, title, and interest in and to any foreign patent or application or applications corresponding to said patents or applications, in whole or in part, including any provisional rights therein, in countries other than the United States, in and to any Letters Patent and similar protective rights granted on said foreign patents or applications, and in and to the right to claim any applicable priority rights arising from or required for said foreign applications under the terms of any applicable conventions, treaties, statutes, or regulations, said foreign applications to be filed and issued in the name of Assignee, or its designee insofar as permitted by applicable law.

2. <u>Cooperation and Recordation</u>. Assignor hereby agrees to cooperate with Assignee as reasonably necessary to give full effect to and perfect the rights of Assignee in the Intellectual Property, and Assignor agrees to execute and deliver all documents and to take all such other actions as Assignee or their respective successors or assigns, may reasonably request to effect the terms of this Assignment and to execute and deliver any and all affidavits, testimonies, declarations, oaths, samples, exhibits, specimens and other documentation as may be reasonably required to effect the terms of this Assignment, including, without limitation, cooperating fully with Assignee to perfect the transfer of the Intellectual Property hereunder and, if appropriate, to assure that the transfer of the Intellectual Property is properly recorded at any appropriate administrative agency or registry, including but not limited to, the United States Patent and Trademark Office. Assignor further agrees that all necessary records of Assignor to establish priority of invention in any interference or similar proceeding will be made available at no additional charge to Assignee, in the event such records are needed in connection with any of the assigned Letters Patent or applications for Letters Patent.

3. <u>Governing Law</u>. This Assignment shall be governed by and construed in accordance with the Laws of the State of Florida without regard to its conflict of laws doctrines.

Exhibit C-2 - Page 2

4.    Delivery of Tangible Items.  Assignor shall arrange for prompt delivery of prosecution files, documents and other tangible embodiments of the Intellectual Property, if any, that are in the possession or control of Assignor.

5.    Maintenance.  Assignor agrees that it has and shall instruct its attorneys and agents who maintain and prosecute the Intellectual Property to take all necessary actions required by the appropriate administrative agency or registry and take all other necessary actions to keep the Intellectual Property in force and in effect in the interim until Assignee takes full control over the prosecution and maintenance of the Intellectual Property.

6.    Effective Date.  This Assignment shall become effective, if at all, simultaneously with the closing of the Purchase Agreement, which is expected to occur on or about _____, 2009.

*[Signature follows on next page.]*

Exhibit C-2 - Page 3

**IN WITNESS WHEREOF,** the parties hereto have caused this Assignment is executed and delivered as of the date first written above:

**ASSIGNOR**:

**ArtSelect, Inc.**

By:_____
Name:_____
Its:_____

**ASSIGNEE**:

**Art.com, Inc.**

By:_____
Name:_____
Its:_____

Exhibit C-2 – Page 4

# EXHIBIT A

Copyright claimed in sales and marketing literature:

    All

Trademark registered:

| | |
|---|---|
| **Word Mark**<br>**Goods and**<br>**Services** | ARTSELECT<br>IC 035. US 100 101 102. G & S: Retail store services, available through a global computer network, featuring custom framed artworks and reproductions of artworks. FIRST USE: 19990406. FIRST USE IN COMMERCE: 19990406 |
| **Word Mark**<br>**Goods and**<br>**Services** | ARTSELECT<br>IC 016. US 002 005 022 023 029 037 038 050. G & S: custom framed artworks and reproductions of artworks, namely, art prints and art photos; unframed artworks, namely, art prints and art photos; posters; and photographs. FIRST USE: 19990406. FIRST USE IN COMMERCE: 19990406 |
| **Word Mark**<br>**Goods and**<br>**Services** | ART GAZEBO<br>IC 016. US 002 005 022 023 029 037 038 050. G & S: custom framed artworks and reproductions of artworks; unframed artworks; posters; and photographs. FIRST USE: 20020215; FIRST USE IN COMMERCE: 20020215 |
| **Word Mark**<br>**Goods and**<br>**Services** | POSTERZ<br>IC 016. US 002 005 022 023 029 037 039 050. G & S: art prints, photographic prints; printed art reproductions; posters |

Trade name or unregistered trademark used in connection with the Business:

ARTSELECT
POSTERSETC

Exhibit C-2 – Page 5

## SCHEDULE 2.2(a) – List of existing operating equipment, manufacturing equipment, office equipment, furniture, computers, computer files and books

| Description | Serial Number |
|---|---|
| Chairs | |
| Monitor | |
| computer equipment | |
| Printer HP Laser Jet 4000 | USNC182222 |
| PowerMac 7100/86 + G3 adaptor + monitor | |
| 1/2 comp equip for Haydn | |
| server | from POC |
| Dell PIII 450K GX1/T+Base and access. | 18K85, mon 0909000304 |
| Slave phone system | |
| Voice mail | |
| 14 handset KX-T7230 | |
| 6 workstations | |
| 12 chairs gry | |
| iMac 333 + 64MB + 128MB Grape | RN925790GV3 |
| iMac 333 + 64MB + 128MB Grape | RN9261DLGV3 |
| iMac 333 + 64MB + 128MB Blueberry | PT9196EZG3H |
| 3 mahogany desks | |
| blue print storage cab | |
| Tape drive (ECR 115-00101), tape cartridge | |
| 10-drawer flat file | |
| 2 Hon 2-drawer laterals | |
| DC265 Digital camera | |
| PRN HP Laserjet 4050se 17PPM 1200 DPI | |
| iMac 333 + 64MB + 128MB Grape | XB9343H4GSQ |
| Quark Express V.4 single | |
| HP 4550Z desktop computer plus accessories | |
| Server/pentium III,drive bays,monitor,etc. | |
| station card, 2 handsets KXT7230 | |
| iMac 333 + 64MB + 128MB Grape | XB93438SGSQ |
| CPU and network cards | 990623-255 |
| Inv. 37789, misc. equipment | |
| 1 handset KXT-7230 | |
| 2 RMS-0010, 1 RMS-0010 custom systems | |
| 4 workstations | |
| phone upgrade KXTD1232 and kit | |
| 4 DIMMS PC100 32x72 (256MB) ECC Reg. | |
| SuperStack II Switch 3300 XM 24 Port | |
| 6 workstations | |
| 4 Panasonic handsets KXT-7433 | |

| | |
|---|---|
| Optiplex GX 110/T, Model MMP, Mon M990 | B3E2J, 4512R-I1Z6U-B9 |
| Optiplex GX 110/T, Mon M990 | BFRDI |
| Optiplex GX 110/T, Mon M990 | BFRDA |
| Prosignia 330 CTO KMAT | A950CHGZF189 |
| 3 handsets KX-T7433 | |
| Compaq S910 Mon | 944GD43AD737 |
| Sony 19" Trinitron monitor | 7048847 |
| Adobe Photoshop 5.5 | |
| MGC mid-tower computer | 94711021JK |
| MGC 19" color monitor | 909000306 |
| MGC 19" color monitor | 909000304 |
| Laserjet 2100M printer | |
| Powermac G4, 256K, modem | XB0021E9HLA |
| Adobe Photoshop 5.5 | |
| Fire-wall server; MGC mid-tower computer | EQ200930-00 |
| 6 handsets KX-T7433 | |
| iMac 333 + 64MB + 128MB Grape | SG937MYGSQ |
| iMac 333 + 64MB + 128MB Grape | SG9372E6GSQ |
| Laserjet 4050T printer | |
| Intel Pentium III 450 Mhz, + 19" mon. viewsonic | 94812166JK, mon 9L00200058 |
| multi-serial port for server (Davinci) | |
| iMac 350 + 64MB + 128MB Blueberry | SRN003779HTH |
| Intel Pentium III 500 Mhz | 00408373JK |
| 4 handsets KXT7433 | |
| Connections | |
| Stronghold commercial lic. | |
| iMac 350 + 64MB + 128MB Blueberry | YM0087XAHQJ |
| Sony 19" Trinitron monitor | 017060366-E |
| 2 handsets KXT7433 | |
| Ram-64X72ECC/R 512 MB for server | |
| adobe web collection MAC | |
| stylus color 3000 MAC/PC printer | AEY0064122 |
| Intel Pentium III 500 Mhz + MGC 17" monitor | 00706002JK, mon 7002008707 |
| HP Laserjet 2100M printer | USCB002341 |
| Intel Pentium III 500 Mhz + MGC 17" monitor | 00507539JK, mon 7005003606 |
| 3 custom systems + 1 512 MB | |
| Powermac G4, 500 MHZ + Sony 21" monitor | , mon S01-7034381-C |
| Adobe design collection, Adobe type manager | |
| 6 CPU-3/750 pentium III ; 1 intel L440GXC | |
| Quark Express V.4 single | XU162394992 |
| Quark Express V.4 single | XU129164393 |
| Quark Express V.4 single | XU192419051 |
| Quark Express V.4 single | XU170088069 |
| Intel Pentium III 500 Mhz + MGC 19" monitor | 00706604JK, mon 9L01417804 |
| Intel Pentium III 500 Mhz + MGC 19" monitor | 00706216JK, mon 9L01417807 |
| 3 256MB Ram for G4 500 | |
| 2 KXT7433 Speakerphone | |
| Adobe Photoshop 5.5 | |
| QuarkXpress 4.1 | |
| Adobe design collection, Adobe type manager | |
| Powermac G4, 500 MHZ + Sony 21" monitor | XB023L86J2S,mon S012702990F |

| | |
|---|---|
| Dell 667Mhz/133 GX 110T | JVMH10B |
| UPS software/CPS connections sn #AB9CT | |
| Dell 667Mhz/133 GX 110T w/monitor w/3com etherlink | 4M5J10B,mon 8923357 |
| adobe web collection MAC | |
| Powermac G4, 500 MHZ + Sony 21" monitor | XB0249J6J2S,mon S012727600A |
| Laserjet 4050T 17 PPM printer | ?????? |
| 3 KXT7433 Speakerphone | |
| Laserjet 4050T 17 PPM printer | ?????? |
| Box Dies for new style boxes | |
| adobe web collection MAC | |
| 2 oak desks | |
| oak credenza | |
| 6 desks with returns | |
| 12 chairs with arms | |
| Mirati chair w/ arms | |
| 14 Hon chairs | |
| desk / peninsula | |
| 4 drawer lateral file | |
| 8 conference table chairs | |
| 1 copier w/ cabinet | NQJ17856 / ZSC18307 |
| Powermac G4, 500 MHZ + Sony 21" monitor | XB022475HSG,mon S012731071 |
| Macromedia web design studio | |
| 5 KXT7433 Speakerphone | |
| Dell 4100 PentiumII 733MHZ, 128MB | C8JF001 |
| 1 set of printing plates for boxes | |
| 1 DB-server custom system;2 intel pentiumIII | |
| MGC server for Davinci | 94630665JK |
| Procurve switch 4000M | SSG03003586 |
| Mid-Tower AMD K62+ 19" monitor | 03039541JK,mon GTBAC01315943 |
| Mid-Tower AMD K62+ 19" monitor | 03039543JK,mon GTBAC01315864 |
| scanner (CCP) | |
| Quark 4.1 for MAC | |
| scanner (CCP) | |
| laserjet 4050N printer | SUSBB402692 |
| 3 allsteel Mirati chairs | |
| 1 mahogany desk | |
| iMac 400 + 64MB + 128MB Grape | YM035FBJJWQ |
| Sony 19" CPD-E400 monitor | 8058640 |
| IBM deskstar 75GB hard drive | IBM YSFAL218 |
| Epson Stylus color printer w/o RIP | |
| pentium iii - stakland | 03039268JK |
| cutting die - Bombay Project | |
| Toshiba laptop - sales | SY0088233U |
| memory - technical | |
| 51 A/B dies/plate | |
| Silk Test software | |
| 4 B dies | |
| Mid-Tower + 19" monitor | 10234676JKBF; MH2754304706 |
| Alvin Trim - 150B w/stand (Scroll cutter) | |
| 4 B dies | |
| Backup Load Balancer | |

| | |
|---|---|
| Custom System PentiumIII (1 of 2) | |
| Custom System PentiumIII (2 of 2) | |
| Poster Shop software edition 5 | |
| Project EZPRO 702 | |
| Mid-Tower 256MG PC + 17" color monitor | 11701593JK |
| Mid-Tower 256MG PC + 17" color monitor | 12318654JK |
| Mid-Tower 256MG PC + 17" color monitor | 11607274JK |
| XIP3900 Laptop | GARD14300001 |
| HL-1470N Laser Printer | |
| 2 addit. PC memory - technical | |
| 2 hard drives - S387 (10 Dual Athlon) upgrades | 1,402,017,214,020,170 |
| Printer INFOPRINT 1140N 40PPM | 41-NBZK1 |
| Printer INFOPRINT 1140N 40PPM | 41-NAYW4 |
| Toshiba Satellite 1800-S254 Laptop | 1078704JU |
| Toshiba Satellite 1800-S254 Laptop | 1078691JU |
| Toshiba Satellite 1800-S254 Laptop | 1078617JU |
| Toshiba Satellite 1800-S254 Laptop | 1078661JU |
| Toshiba Satellite 1800-S254 Laptop | 1080402JU |
| MGC mid-tower computer | 14822549JK |
| MGC mid-tower workr station | 14822430JK |
| MGC mid-tower workr station | 14822466JK |
| 2 cutting dies | |
| 2 cutting dies | |
| 2 cutting dies, printing plates | |
| 2 cutting dies, printing plates | |
| 2 cutting dies, printing plates | |
| 2 cutting dies, printing plates | |
| Pavilion zt1180 Intel Pentium III Laptop | TW20112762 |
| 2 cutting dies, printing plates | |
| Mid-tower ATX 250W w/keyboard | 13416 |
| Mid-tower ATX 300W w/keyboard | 10948 |
| Toshiba Satellite 1800-S207 laptop | Z1061398PU |
| CEO office furniture | |
| Titan II large format scanner | Titan II Large format scanner |
| Appro 1124i rackmount IU computer systems | AP100738 |
| Appro 1124i rackmount IU computer systems | AP100835 |
| Appro 1124i rackmount IU computer systems | AP100736 |
| Appro 1124i rackmount IU computer systems | AP100833 |
| Appro 1124i rackmount IU computer systems | AP100834 |
| Symantec: Norton AntiVirus Corporate Edition | Item #254917 |
| HP 500 Athlon XP Computer & accessories | MX22001723 |
| 2 gb memory for each server bought 5/29/02 | |
| 5 80 GB HD | |
| Microsoft XP Professional (3-pack) | |
| MGC Mid-Tower Computer; 40GB Hard drive | S/N 378585A |
| MGC Mid-Tower Computer; 40GB Hard drive | S/N 378585B |
| MGC Mid-Tower Computer; 40GB Hard drive | S/N 378589 |
| Panasonic KXTVS voicemail system | Panasonic KXTVS VM system, 4 port |
| 2 Quill 4-drawer fireproof file cabinets | |
| 4 copies UPG-V Adobe Photoshop 7.0 Mac | |
| Dell Laptop Mobile Pentium 4 Processor, 1.7 Ghz | S/N 614PV11 (Dell Express Serv. Tag) |

| | |
|---|---|
| UPG Retro Multi SVR Win 6.0 | |
| 20 copies Symantec Antivirus Corp. Ed. 8.0 | |
| Microsoft Office XP Professional Edition | |
| Microsoft Office XP Professional Edition | |
| Microsoft Office XP Professional Edition | |
| Microsoft Office XP Professional Edition | |
| Microsoft Office XP Professional Edition | |
| Soundstation Premier Ex Conference Phone | |
| MGC Desktop Computer, 40GB Hard drive + 19" color monitor | S/N 78RQ021 |
| MGC Desktop Computer, 40GB Hard drive + 19" color monitor | S/N 69RQ021 |
| MGC Desktop Computer, 40GB Hard drive + 19" color monitor | S/N 98RQ021 |
| Apple Computer Powermac DP G4 867 MHZ, 60GB | XB2372EE-MUM-ff11 |
| CISCO & Catalyst switch | |
| Dell Laptop Mobile Pentium 4 Processor, 1.7 Ghz | S/N G8K1321 |
| Lexmark C750 Color Laser Printer | S/N 9400RXB |
| Office XP Professional 98/WME/NT/W2K | |
| Info Print Printer 1140N 40PPM 32MB PCL PS | 41-NBZK1 |
| Lumber, etc., for work tables | |
| Fletcher 3100 (cuts acrylic, foam & glass) | F3100A-7/02 |
| Pivano Digitomatic 3 | |
| 512 MB PC 2700 (tower) | ? |
| Digital Vacuseal 44 x 68 | VM000203 |
| Mitre-Mite VN4 Mem Prog Machine Underpinner | A48272 |
| TableTop Strapping machine (bander) | 5719 |
| Storage Units | |
| Eclipse Lt 40 x 60 upright | LT40600008 |
| EE Computer xp + 17" monitor | (S)1Z76577NF |
| EE Monitor stand for Eclipse | |
| EE machine stand for Eclipse | |
| Saw Pistorius EMN-14 W/PNEU, blades | 276580 |
| Porcher Cable 7-Horse, 80 Gal. Air Compressor | 2080043 |
| Telephone cordless system | 2JATE062684 |
| Dell Wkstation 510D and VS-1901S Monitor | S/N 1745DAC47309154 |
| Dell Wkstation 510D and VS-1901S Monitor | Computer: DR1ND21; Monitor: 1980SAC43602146 |
| Raymond Order Picker with charger | 152-89-02191/142130-6-Fl |
| Storage Units | |
| OB-60 trash compactor ( Downstroke Baler) | #3861 |
| Toyota Forklift Triple Stage - 1999 | 79464 |
| Powershot G3 4.0MP digital camera | digital camera & compactflash card |
| Dust collector system | |
| 3 Microsoft Office XP  Professional Editions | |
| 5 IBM (Hitachi) Deskstar harddrives | |
| Estey "L" Bar Sealer Model EM3040 | 12673040TPP |
| Estey Model DT4812 Shrink Tunnel with heavy-duty roller | 2953612T6 |
| Tooling (Rotary dies for mini-master Display | |
| printing dies for 51A,51B,101A,101B | |
| MGC Mid-Tower Computer | |
| pre-mounted printing plates | |
| Server Appro-1124i-69 | AP54864 |

| | |
|---|---|
| Server Appro-1124i-69 | AP54879 |
| 8 server memory units | - |
| Server Appro-1124i-69 | AP54880 |
| MGC Mid-Tower Computer | MGC030717A |
| MGC Mid-Tower Computer | MGC030717B |
| MGC Mid-Tower Computer | MGC030717C |
| MGC Mid-Tower Computer | MGC030717D |
| 3 Macromedia Dreamweaver MX | |
| Server Appro-1100H-80 & memory | |
| MGC Mid-Tower Computer | MGC030724B |
| MGC Mid-Tower Computer | MGC030724A |
| Server Appro-1124S-69 | |
| Server Appro-1124i-69 | |
| Wall & Central Storage Units; Blueprint cabinets | |
| printing dies for 202A | |
| MGC Mid-Tower Computer | MGC080812A |
| MGC Mid-Tower Computer | MGC080818A |
| MGC Mid-Tower Computer | MGC080818B |
| MGC Mid-Tower Computer | MGC030827A |
| MGC Mid-Tower Computer | MGC030825A |
| Eclipse XL 40 x 60 upright | XC40600060 |
| MGC Mid-Tower Computer | MGC030905A |
| Zebra/Eltron 2746e Desktop Printer | 74A033000276 |
| Zebra/Eltron 2746e Desktop Printer | 74A033000269 |
| 2.6 GHZ Computer & E90 19" Monitor | USU33600IN MFG# DJ660A#ABA |
| MGC Mid-Tower Computer | MGC030910A |
| MGC Mid-Tower Computer | MGC030917A |
| MGC Mid-Tower Computer | MGC030917B |
| Mitre-Mite VN4 Mem Prog Machine, table, etc. Underpinner | 44848,KPSN/MAI420 |
| QB Enterprise Solutions 3.0 | Reg #080-089-012-882-090-024 |
| Digital Vacuseal 44 x 69 | VM000413 |
| Lumber to build Mat cabinets | |
| iMac, 1.25GHz, PPC G4, 17-in screen | W83335318PJH |
| Digital Vacuseal Stand | |
| Lexmark printer | S991832C |
| Sullivan - Palatek air compressor, Model #20DT | 03J040 |
| Lexmark printer, model #T630dn | S99197NC |
| MGC Mid-tower computer, Pent 4, 2.66 ptoc. | MGC031023B |
| MGC Mid-tower computer, Pent 4, 2.66 ptoc. | MGC031022A |
| MGC Mid-tower computer, Pent 4, 2.66 ptoc. | MGC031021A |
| MGC Mid-tower computer, Pent 4, 2.66 ptoc. | MGC031021B |
| MGC Mid-tower computer, Pent 4, 2.66 ptoc. | |
| Teleco, Catalog project telephone system & install | |
| Teleco, Catalog project tel. Support | |
| printing dies for 301A | |
| 63" Fletcher , EFL3160 | |
| MGC Mid-tower computer, Pent 4, 2.66 ptoc. | MGC |
| MGC Mid-tower computer, Pent 4, 2.66 ptoc. | MGC031126A |
| Dell Inspiron 300M Pentium M1.20 GHz with 12.1 XGA Display - Laptop | 8MD2041 |

| | |
|---|---|
| PBG4 17"/1.33GHZ/512/80/SuperDrive with Software and peripherals | V7346089P22 |
| Stretch Aire - canvas stretching machine | 97020 |
| MGC Mid-tower computer, Pent 4, 2.66 ptoc. | MGC040129A |
| LCD19D 19in LCD Display SLV & BLK | WCCD5000946 |
| KXT CPU 1232-6 upgrade kit | KXTD1232CPU12M |
| DX80 KSUI pkg 4 sets, 4 in, 8 out | |
| # Celeron workstations; 1 pentium 4 workstation | |
| Panalog Call mGt. sftware | |
| MGC Mid-tower computer, Pent 4, 2.66 ptoc. | MGC031804 |
| office furniture | |
| Tecra M2-s630 P4C-1.7GHZ 512 MB | 4366-7360-8230-0129 |
| office furniture | |
| Apple computer | UV34025XPHK |
| Apple computer | W84021VQQB7 |
| Apple computer | SCY4071PHLFA |
| Apple computer | G84115ANPXD |
| Server | AP62707 |
| Intel Premium 4 1000 Configurator 800 | |
| Comdial phone system config | |
| motherboard and upgrades | |
| tables/shelves | |
| *mattress and frame* | |
| NETGEAR 24PT SMART GIG SWCH | GST7246DA001509 |
| Server APPRO 1122HS-81 | AP65503 |
| Server APPRO 1122HS-81 | AP65507,AP65508 |
| SMART UPS 3000 VA 120 | |
| **Toshiba- Laptop A60-S166 P4 2.8 256/40/COMBO** | s74195363q, s74195178q |
| upgrade to 512 MB, new motherboard, hard drive | none shown |
| 5 HP Dust Collector | G5954 |
| *Sofa* | dh9000 |
| *Chair* | dh9007 |
| *Chair* | lp8009 |
| Dell Power Connect | 5FCS741 |
| Dell Dimension 2400 series | CJPGP51 8JPGP51 |
| upgrade to 512 MB, new motherboard, hard drive | 94711021jk |
| Pistorius saw | none |
| poweredge 400SC | 2XK4Q51 |
| Dimeniosn 3000 | 2H79Q51 |
| powrredge 400SC | D5YWQ51 |
| stretching machine | none |
| 2.8GHz/1MB Cache, Xeon | 221-5193 |
| Dell computer for Robert Reeder | ? |
| Dell computer for Roy David | ? |
| 2 computers and a hard drive | ? |
| Dell projector | ? |
| Dimension 3 | |
| 148GB | |
| Inspiron 2200 256MB - Laptop | 4776369373 |
| Server, APPRO-2128Hi-81 | AP75497 |
| Server | AP75999 |
| Servers (2) | AP76081 and 082 |

| | |
|---|---|
| Dimension 4700 | |
| Dimension 4700 | |
| Server | |
| Server | |
| Inspiron 6000 | 15989958865 |
| Dimension 3000 | |
| Dimension 3000 | |
| Apple PM 2XG5 | |
| backup soft ware upgrade | V181068-OLB000 |
| Inspiron 6000 | 15779973169 |
| Dimension 5150 | |
| Inspiron 6000 | 1749481704 |
| Inspiron 6000 | disposed of on 05/06 |
| Inspiron 700m - Laptop | |
| Travelite 1875 3-HD kit | |
| Desk Top Computer | GT5034 |
| IBM IP1552 printer | 7903ZBX |
| Lexmark T640n printer | |
| TV and DVD player | |
| Dimension E310-P4 | |
| Laptop LATD610,PM740 | 36221380741 |
| Laptop LATD610,PM740 | 32783844421 |
| IBM IP1552 Network Printer | 39V0065 |
| racks | |
| 1322Ha, Xtreme Serv | AP82671 |
| 1322Ha, Xtreme Serv | AP82672 |
| 1322Ha, Xtreme Serv | AP82585 |
| 1322Ha, Xtreme Serv | AP82586 |
| 1322Ha, Xtreme Serv | AP82587 |
| 1322Ha, Xtreme Serv | AP82588 |
| Low Profile Scale Pallet Truck | |
| Dell Latitude D610- laptop and flat screen monitor | 36221380741 |
| Dell Latitude D620 - laptop | 7711490701 |
| projector and screen | |
| Dell Latitude D620 - laptop | 20773822861 |
| server for peacekeeper | |
| 1322Ha, Xtreme Serv | |
| Scales | |
| Dell Latitude D620 - laptop | 3898792189 |
| desktop | |
| XtremeServers | AP87143,44,45,46,47 |
| XtremeServers | AP87148,49 |
| 5219 Mettler Toledao Wildcat Bench | WS150VR |
| T-125 60" Gallery Wrap 48" leg | |
| D70s Digital SLR; f2.8 lens, etc. | |
| desktop | |
| photo lamps | |
| glass cutter | |
| IBM Thinkpad - Levino Z61m - laptop | L3-AP636 06/12 |
| 2 PC's | |
| 3 PC's | |

| | |
|---|---|
| Nikon D80 SLR | |
| APC Smart-Ups 300VA rackmount battery backups for servers | |
| Polychem semi automatic strapping machine (bander) | |
| Press w/Stand 50.25 x 98.25 | |
| TRIM150B- Neolt 59" Trimmer w/Stand & Waste catcher | |
| Virtical mite saw | |
| 3 glass tops for work tables | |
| 6m Racking Mount (storage shelves) | |
| perforated 24"W 10-step steel rolling ladder | |
| strapping machine | |
| factory racking parts | |
| April Mondia's Dell laptop | |
| 2212HE, PE2970, 2X1/2.0GHZ, 2ND PROC | |
| Tilt Truck 1 Cu Yd | |
| Wire Decks 42x46 | |
| IBM Thinkpad - Levino Z61m - laptop | L3A8707 |
| Hard Drive for Davainci | |

## SCHEDULE 2.2(b) – List of trademarks, trade names, service marks

Trademarks: ArtSelect, Art Gazebo, PosterZ, PostersEtc.

Trade names: ArtSelect, PostersEtc.

Internet domain names:

omworkspaceart.com
yourartstore.com
meijerart.com
equityartemployee.com
worldartworks.com
posterselect.net
postersselect.com
postersselect.net
rugselect.com
furniture-galleryart.com
homedecoratorsart.com
ordercanvas.com
lizellart.com
lizellofficeart.com
yourframestore.com
procustomcanvas.com
clubfurniture-art.com
homeideasartstore.com
mirrorselect.com
freeartcard.com
freeartcards.com
photoselect.us
boiseart.com
photoartselect.com
photoartselect.net
decoratingwithart.com
freeartcard.net
freeartcard.org
freeartcards.net
freeartcards.org
hdcart.com
sportsartselect.com
domesticationsart.com
improvementsart.com
companykidsart.com
thecompanystoreart.com
thecompanystorekidsart.com

rosssimonsart.com
artselect.com
ross-simonsart.com
clockselect.com
postersetcetera.com
softsurroundingart.com
softsurroundingsart.com
masterworksartsales.com
joannart.com
barnesfoundationartprints.com
barnesfoundationartprints.org
dorm2u.com
officedepotart.com
tciart.com
dormitoryposter.com
mydormart.com
artfulwalls.com
artgazebo.com
charityartevents.org
cpsart.com
equityart.com
workspaceart.com
hdcartstore.com
posterz.org
framedposterz.com
artdecorservices.com
ifgartsource.com
artfulfillmentcenter.com
fineartselect.com
posterartselect.com
printartselect.com
artselectprints.com
artselectartbeat.com
artselectartwire.com
postersetc.com

**SCHEDULE 2.4 – OMITTED**

## SCHEDULE 4.5 – PRICE ALLOCATION

100% of Purchase Price Allocation for Assets. Specific allocations to be determined by Purchaser at or prior to the Closing.

## SCHEDULE 5.2(d) – ENCUMBRANCES ON PURCHASED ASSETS

None

## SCHEDULE 5.2(f) - CLAIMS, LITIGATION AND DISPUTES

None

## SCHEDULE 6.2 – CONDUCT OF BUSINESS PENDING THE CLOSING

Holdback on vendors for month of November.

## <u>SCHEDULE 6.2(e) – RAISES OR BONUSES TO EMPLOYEES</u>

No raises or bonuses for anyone since August 1, 2008.